MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* GILBERT, ADMINISTRATOR.

4-7208                                          178 S. W. 2d 73

Opinion delivered January 24, 1944.

684

·Thos. B. Pryor, Sr., H. L. Ponder, Sr., and John L. Daggett, for appellant.

Pickens & Pickens, for appellee.

. KNOX, J. On September 30, 1942, Walter Sexton Gilbert was engaged in the service of his employer, A. J. Spicer, Inc., in the unloading of gravel from railroad cars which were stationed along a switch track at or near an air field then being constructed by his employer 'near Newport, Arkansas. The switch track was connected with the railroad line of the Missouri Pacific Railroad Company. In the performance of his duties Gilbert was required to sit on the side wall of the car out of which the gravel was being taken, and while he was in that position employees of the railroad pushed a string of cars on to the switch track and against the car on which Gilbert was working, with such force and violence that the collision thereof knocked Gilbert from his post and caused him to fall under the wheels of the car, severely cutting, bruising and lacerating him to the extent that he died from the injuries so received after suffering great conscious pain and mental anguish for a period of some nine and a half hours.

This suit was instituted to recover for the benefit of the estate, the widow and next of kin. The answer filed by appellants denied negligence, but at the trial in the course of the opening argument counsel for defendants admitted that the defendants were negligent· and liable, and told the jury that the only question for them to determine was how much damages the plaintiffs were entitled to recover.

The prayer of the complaint sought recovery of three items of damage, to-wit: (1) $25,000 for the benefit of the widow for loss of consortium and companionship; (2) $75,000 for loss of earnings of the deceased, and (3) $25,000 for the benefit of the estate on account of conscious pain and suffering of the deceased.

The verdict of the jury awarded damages for each item claimed as follows: (1) For Della Gilbert for loss of consortium and companionship of her husband, $5,000; (2) for the benefit of the estate for conscious pain and suffering, $2,500; (3) for the benefit of widow and next of kin for loss of pecuniary contributions, $27,500.

Only two questions are argued on appeal, namely, that the court erred in allowing the jury to assess damages to the widow for the loss of consortium and companionship, and that the verdict for contribution was grossly excessive.

In the case of *Helena Gas Company* v. *Rogers,* 98 Ark. 413, 135 S. W. 904, it was held that sorrow caused by the death of the husband and loss of his companionship are not elements of damage to be recovered by the widow, for the reason that the statute (§ 1278, Pope's Digest) contemplates damages only "with reference to pecuniary injuries." At the request of counsel for appellants the court in the case at bar gave instruction No. 9, which told the jury that the widow's recovery for consortium was limited to such loss as might reasonably be regarded as being pecuniary in nature.

At the time the motion for new trial was filed and presented to the trial court counsel for the parties stipulated as follows: "It is further stipulated that the instruction to the jury that the jury should make separate findings in their verdict for loss of companionship and consortium was requested by the attorneys for the defendants."

In the brief filed on behalf of appellants here, and in the argument before the court, counsel for appellants frankly admit that they sought separate awards by the

jury in the trial court so that they might have some basis for measuring the correctness thereof, and that they prepared the form of verdict, which was submitted to the jury by the trial court. They argue, however, that since the right of action is founded upon the statute the allowance of the recovery of damages not authorized by statute is inherently wrong, and beyond the power of the court, notwithstanding the absence of specific objection, and, also, notwithstanding the fact that the defendants requested a separate item verdict upon a form prepared by them, which included as one of the items loss of consortium.

It is well settled by the decisions of this court that the failure to object to an instruction ordinarily operates as a waiver of any error that may be committed in giving it. Likewise, upon the doctrine of invited error, a party cannot complain of an alleged erroneous action of the trial court if he himself has induced such action.

In the case of *Wolff* v. *Alexander Film Co.*, 186 Ark. 848, 56 S. W. 2d 424, we said: "It is next urged that the court erred in rendering judgment for the full amount of rentals less payments, as that is not the correct measure of damages. That was not an issue in the court below. Appellant defended on the sole ground of a breach of the contract. The question of the measure of damage was raised in the motion for a new trial for the first time. Since it was not an issue in the court below, it cannot be considered here on appeal."

As we view it, the instruction which authorized the jury to include in their verdict as an element of damage the loss by the wife of consortium and companionship of her husband amounted simply to an erroneous declaration as to the measure of damage in such cases and, since the question as to its correctness was raised for the first time in the motion for a new trial then, under the authority of *Wolff* v. *Alexander Film Co.*, *supra*, it cannot be considered here on appeal.

We have reached the conclusion that the award of $27,500 for the benefit of the widow and children on account of pecuniary contributions is excessive.

In the case of *Mo. Pac. Transportation Co.* v. *Simon,* 199 Ark. 289, 135 S. W. 2d 336, many of our cases relating to awards for injury and death are reviewed, and it is disclosed that there exists a wide range in the amounts which have been awarded by juries, and allowed by this court, in cases where much similarity exists. In explanation thereof it was said: "In reading our own cases, many of which are not cited in this opinion (and a number of which might be shown as authority either for or against reducing judgments), the conclusion is inescapable that factors other than mere physical or mental injuries and loss of earning capacity and the elements usually enumerated are taken into consideration where the facts as set out in the opinions are seemingly similar. Otherwise such divergent views would not have been expressed." It was there further stated: "No rule has been established—and in the nature of things none can be—for determining what compensation should be paid for loss of life, for pain and suffering, for loss or decrease of earning power, for mental anguish accompanied by physical injury, for loss of companionship, and for the various elements entering into damage actions."

The pecuniary value of the loss of future earnings of the deceased is a factor to be considered in determining the loss of the financial aid to the widow and children. 16 Am. Jur., pages 127, 132 and 143. To prove loss of future earnings due to impairment of earning capacity, it is essential to prove the earning power of the decedent at the time of the accident and death. Evidence as to prior earning is not necessarily confined to the immediate time prior to the accident, and there appears to be a wide divergency in the opinion of the courts of the various states as to the period of time which may be considered. 25 C. J. S., page 25. An annotation upon this question is found at 130 A. L. R., page 164, which discloses that some courts permit proof of earnings over a period of many years to be introduced, while other courts limit the time materially.

In the case at bar counsel for appellants through the cross-examination of the widow elicited from her information respecting the earnings of the deceased for a period of some ten years prior to his death. The evidence discloses that the deceased and the appellee, Della Gilbert, were married in February, 1934, and from that date until November, 1940, the deceased worked as a farm hand and timber cutter. The widow stated that she could not definitely recall what his wage during that time was, but she thought it was about $1.50 per day. In November, 1940, deceased moved to Chicago, and for one year was employed as a bakery helper at a wage of $20 per week. He then moved to Fort Wayne, Indiana, and for some three or four months worked as a bakery helper for $20 per week. He returned to Arkansas and worked for awhile at a stave mill at Batesville, Arkansas, for $14 per week. For the last five weeks of his life, as before stated, he was employed in the construction of an air port, and his average weekly wage amounted to $36 per week. The testimony shows that while engaged on his last job he paid $8 per week for board and had some small additional personal expenses, but the record does not show any personal expenses for other items, and the testimony is, that with the exception of his room and board and these other personal expenses, he contributed his earnings to his wife and children.

In view of the fact that the deceased had been employed on the air port job for only five weeks, and such employment was of a temporary nature, it would appear that this employment, and the compensation paid therefor, considered alone would not be a proper test to furnish a fair and general measure of his earning capacity. 25 C. J. S. 625; *Ill. Steel Co.* v. *Ostrowski,* 62 N. E. 822, 194 Ill. 377; Note C, 130 A. L. R. 174. The deceased at the time of his death was 30 years of age, and had an expectancy of life of 35 years. He left surviving him his widow, who is 31 years of age, and two daughters eight and five years respectively, and one son three years of age. At the time of his death his wife was pregnant.

If we should assume that but for the unfortunate accident the deceased would have (1) lived out his full expectancy; (2) received during all of that time a wage equal to that which he was actually receiving at the time of his death; (3) contributed during all of that time to his wife and children the same percentage of said wages as he was contributing at the time of his death, regardless of the fact that the children would have long prior thereto reached majority; and in reducing such contributions to their present value we should use as the basis for calculation of interest a rate of only one-half of the legal rate of interest, nevertheless the amount awarded by the jury in this case for pecuniary loss of contribution would exceed the amount which would be arrived at upon the basis of the generous calculation suggested. Surely it is not within the realm of probabilities that all of these favorable circumstances would have occurred. The prior history of the experience of the deceased and his family discloses that their income had been very meager, and this temporary employment in the construction of this air port brought him a wage much larger than that which he had at any time received in the past.

In addition to these facts, it must be remembered that the deceased at 30 years of age was at the peak of his earning capacity as a common laborer, and that slowly, perhaps, but surely his ability to earn would grow less and less throughout the remaining years of his expectancy, and as was said by Mr. Justice BUTLER in *Mo. & N. Ark. R. R. Co.* v. *Robinson,* 188 Ark. 334, 65 S. W. 2d 546, "It is wholly irrational to believe that during these years he would have earned a wage equal to that of his vigorous manhood." See, also, *Mo. Pac. R. R. Co.* v. *McKamey,* 205 Ark. 907, 171 S. W. 2d 932.

It is to be remembered also that the verdict is based upon future contributions which it is assumed would have been made by the deceased to the widow and children had he lived. His expectancy was 35 years. The oldest daughter will reach her majority in 10 years, the second daughter will reach her majority in 13 years, and the son will reach his majority in 19 years, and the

posthumous child will reach his or her majority in 21 or 18 years. Recovery for benefit of children ordinarily should be limited to the present worth of such sum which would be contributed by the parent prior to their majority. *Kansas City R. R. Co.* v. *Leslie,* 125 Ark. 516, 189 S. W. 171; *Mo. Pac. R. R. Co.* v.-*Foreman,* 196 Ark. 636, 119 S. W. 2d 747.

In estimating damage resulting from loss or impairment of earning capacity, "the reasonable and dependable probabilities, looking through all that may happen and for all the years for which the computation is to be made, and viewed according to the general experiences and observations of life, are the elements which are to guide to a fair and acceptable result." *Miss. Power & Light Co.* v. *McCormick,* 166 So. 534, 175 Miss. 337. Reviewing the record here in that light, we have reached the conclusion that the award of $27,500 for the benefit of the widow and next of kin for loss of pecuniary contributions is excessive by $7,500, and that the verdict of the jury as to that item should not have exceeded the sum of $20,000.

If within 15 days appellee shall enter a remittitur of $7,500, thus reducing the award for the widow and next of kin for the loss of pecuniary contribution to $20,000, the judgment as- so reduced will be affirmed, otherwise the judgment will be reversed, and the cause remanded for a new trial.

Mr. Justice McHaney is of the opinion that the sum of $7,500 fixed as the required remittitur is too small, and that the judgment should be still more materially reduced, and for that reason he dissents.