## BIBLER BROTHERS TIMBER CORPORATION *v.*
## TOJAC MINERALS, INC. et al

83-247                                    664 S.W.2d 472

Supreme Court of Arkansas
Opinion delivered February 21, 1984

*Smith, Stroud, McClerkin, Dunn & Nutter,* by: *Charles A. Morgan,* for appellant.

*Martin, Vater & Karr,* by: *Robert W. Vater;* and *Keith, Clegg & Eckert,* by: *Oliver M. Clegg,* for appellee.

ROBERT H. DUDLEY, Justice. The appellant, the lessor of oil and gas rights, seeks to cancel part of the lease by asking a court of equity to vertically sever the lessees' oil and gas rights in lands lying outside a producing unit from the lessees' oil and gas rights in lands located within the producing unit. The Chancellor refused to cancel the lease of oil and gas rights in lands outside the producing unit. We affirm. Jurisdiction is in the Court under Rule 29(1)(n).

On March 14, 1972 the appellant leased the oil and gas rights in 1,766 acres of land to the Ferguson Oil Company and, through mesne conveyances, the appellee, along with others, became a lessee. The lease provides for a primary term of ten years at a rental of $1,766 the first year and delay rentals in the same amount each year until drilling is commenced. These rentals were paid each year and drilling was commenced on February 23, 1982, about three weeks before the primary term of the lease expired. A producing gas well was completed on March 28, 1982 and appellant has, since then, received royalties.

The 1,766 acres are in six different sections of land. The well is located in section one. In 1960 and 1964 the Arkansas Oil and Gas Commission integrated all royalty and similar interests in each drilling unit in the gas field as authorized by Ark. Stat. Ann. § 53-115 A-2 (Repl. 1971). In January, 1982, TXO Production Corp. filed a petition with the Commission asking that all owners of leasehold working interests be forced to contribute, either directly or through later royalties, to the cost of drilling, completing, and equipping a well to be located in section one. The Commission granted the compulsory pooling order. The TXO well in section one was then completed as a producing well and appellant has since drawn royalties.

The appellant now seeks to cancel the lease on the other five sections of land, comprising 1,406 acres, which are not included in the producing unit. Paragraph 6 of the lease gives the *lessee* the right to pool or unitize its estate in order

to create a drilling or production Unit:

> Lessee is hereby given the power and right, as to all or any part of the land described above and as to any one or more of the formations thereunder and the oil and gas produced therefrom, at its option and without Lessor's joinder or future consent, to at any time, either before or after production, pool and unitize the leasehold estate and the Lessor's royalty estate created hereby with the rights of any third parties, if any, in all or any part of the land described herein and with any other land, lands, lease, leases, mineral and royalty rights, or any of them adjacent, adjoining or located within the immediate vicinity of the above described lands, whether owned by Lessee or some other person, firm or corporation, so as to create by such pooling and unitization one or more drilling or production units.

Paragraph 6 also includes the standard provision that production from a well on the drilling unit would have the same effect as if the well were drilled on the land embraced by the lease. The paragraph concludes with the following statement:

> In the event however that only a part of the lands embraced by this lease are included in *a unit created hereunder,* then the remainng portion of the lands embraced by this lease shall be subject to delay rental payments as provided in Paragraph 4.

Appellant contends the last sentence created a vertical severance of the lease. It argues "that only a part of the lands embraced by this lease" were included in a pooling agreement, that is, 360 of the 1,766 acres: Thus, the remaining portion of lands embraced by the lease was still subject to the delay rental payments and since no delay rental payments were required to be paid after the primary term of the lease, the lease could only be extended to unitized or pooled areas that were actively drilling for oil or gas.

The short answer to appellant's argument is that there was no "unit created hereunder." There simply was no

voluntary pooling by the lessee. Instead, the unit was created by a compulsory pooling order of the Oil and Gas Commission after a petition by TXO Production Corp., a third party.

The in-depth answer requires an analysis of the differing effect of compulsory pooling and voluntary pooling on a clause purporting to sever an oil and gas leasehold. We have no Arkansas case in point but a Louisiana case thoroughly considered the issue. *Bennett, et al* v. *Sinclair Oil and Gas Co.,* 275 F.Supp. 886 (W.D. La. 1967). The clause in *Bennett* granted to the Lessee the power to pool and unitize "if at any time while this lease is in force and effect lessee in its option deems it advisable and expedient" to do so. The language, similar to the discretionary power given to lessee in the present case, indicates the clause refers to voluntary rather than compulsory pooling. *Bennett* states:

> In other words, voluntary pooling by the lessee would be within the contemplation of the parties, being expressly provided for in the lease. Conversely, a forced unitization and pooling order by the Commissioner would not be within the ambit of the intention of the parties under Clause 6 because no provision for such action existed in the lease . . . Admittedly, there is little jurisprudence on this particular point, but the decisions which have been rendered by the Louisiana courts clearly indicate that the Pugh Clause is inoperative where there is a compulsory unit established by the Commissioner of Conservation. One plausible explanation for this reasoning might be the strong mandate found in *Hunter* v. *Shell Oil Co.* [211 La. 893, 31 So.2d 10 (1947)] and similar cases which stand for the proposition that the oil and gas lease is an indivisible obligation in the absence of express provision to the contrary.

The provision in this case relates to units formed voluntarily, at the discretion of the lessee, and not to compulsory units. The general rule is that an oil, gas and mineral lease is indivisible. Production in any part of the

lease keeps the lease in effect for as long as oil, gas and other minerals are being produced on any of the lands described in the instrument. The standard lease with a pooling clause provides that the entire lease will be considered held by production, whether that production is on the pooled area or some area of the tract that has not been unitized.

In 1947, Lawrence G. Pugh, a lawyer in Crowley, Louisiana, recognized that a lease was normally held to be indivisible. He drafted a clause calculated to prevent the holding of non-pooled acreage in his clients' leases while other portions were being held under pooled arrangements. These clauses were termed "Pugh" clauses.

Appellant contends the Paragraph 6 language constitutes a Pugh clause. Williams and Meyers' *Oil and Gas Terms,* p. 602, defines a Pugh clause as "a type of pooling clause which provides that drilling operations on or production from a pooled unit or units shall maintain the lease in force only as to lands included within such unit or units."

The clause in *Bennett, supra,* which is characterized as a Pugh clause is as follows:

> 6. . . .If operations be conducted on or production be secured from land in such pooled unit other than land covered by this lease, it shall have the same effect as to maintaining lessee's rights in force hereunder as if such operations were on or such production from land covered hereby, *except that its effect shall be limited to the land covered hereby which is included in such pooled unit.*
> (Emphasis added with Pugh Clause in italics.)

The definition and the example contrasts with the language in this case. The lease before us does not state the lease will be in effect only as to unitized lands. Instead, it states that the lands outside the unit are subject to delay rentals under Paragraph 4 of the lease. Since, according to Paragraph 4, delay rentals are not owing after lessee commences drilling or after the primary term of the lease, the language fails as a Pugh clause and also fails to impose

delay rentals on appellees.

Appellant's final point for reversal is that the trial court erred in granting judgment on the pleadings because material issues of fact were unresolved. Specifically, appellant alleges the issue in dispute is whether the lease was subject to forfeiture due to appellees' failure to drill and develop the non-unitized acreage. However, the failure to drill and develop was waived when the appellant asserted positively in its Motion for Summary Judgment:

> "That there is no genuine issue as to any material fact and that Plaintiff [appellant] is entitled to a judgment as a matter of law."

Affirmed.