Gladys BRISCOE *v.* SHOPPERS NEWS, INC. et al

CA 83-311                                    664 S.W.2d 886

Court of Appeals of Arkansas
Division II
Opinion delivered February 29, 1984

*R. J. Brown, P.A.,* by: *Lisa A. Kelly,* for appellant.

*Paul Hickey, P.A.,* and *W. J. Walker,* for appellees First National Bank and Bland Adkins.

*Thorp Thomas,* for appellee Shoppers News, Inc.

GEORGE K. CRACRAFT, Judge. Gladys Briscoe appeals from a decree of the Chancery Court of Pulaski County alleging several errors. We find no merit in any of them and affirm.

Gladys Briscoe was the owner of a five-acre tract on which her residence was located. In February 1971 she entered into a lease purchase agreement with Shoppers News, Inc. in which she agreed to construct an office building at a cost of approximately $30,000 on a quarter acre tract behind her residence and lease it to Shoppers News for a term of eight years and four months at a rental of $300 per month. She also agreed to provide a thirty-foot easement for access along the south side of the property extending to the center of Mabelvale Pike. Shoppers News was granted an option to purchase the leased premises at the end of the lease term for a further consideration of $6,000. The agreement recited that Briscoe was constructing an office building adjacent to Shoppers News and granted Shoppers News a first refusal to purchase it and the property on which her home was located should she elect to sell it. The lease also contained the following provisions:

> It is understood that the property upon which the building is so constructed will be subject to a mortgage, but it is also understood that in the event of purchase by the lessee, the property will be conveyed by warranty deed showing a clear and merchantable title. In the event the lessor shall default in the payment of the

mortgage payments against said property, the Shopper News, Inc. shall have the right to continue these same payments with the mortgagee for the purchase of the property described in this instrument.

On March 10, 1971 Briscoe obtained the financing for the construction of the Shoppers News building by executing a note in the sum of $30,000 payable to the appellee, Bland Adkins, and securing the note by a mortgage on her entire five-acre tract. In December, Briscoe executed a note for an additional $30,000 to Bland Adkins also secured by a mortgage on the entire five-acre tract. The first $30,000 was used to build the Shoppers News building but the second $30,000 was used only for erecting an additional office building and for improvements on Briscoe's residence.

Subsequently Briscoe became indebted to the First National Bank of Little Rock and secured that indebtedness by a mortgage on a part of the five-acre tract which did not include the Shoppers News leasehold.

At the time the lease purchase agreement was executed Briscoe was one of seven equal shareholders in Shoppers News and was employed by it. Tommy Trent subsequently acquired a controlling interest in the corporation and terminated Briscoe's employment at Shoppers News in September 1972.

The litigation between Briscoe and Shoppers News began in 1974 when Shoppers News brought an action seeking to enjoin her from interfering with its access to the property. She counterclaimed against Shoppers News and Tommy Trent seeking an accounting and other relief not involved in this proceeding. In 1974 the chancery court entered a "partial decree" declaring that Shoppers News was entitled to an easement across Briscoe's property thirty feet in width "along the south line of the leased property and extending to the center of Mabelvale Pike." The record does not reflect any action on the accounting issues.

In 1979 at the termination of the term provided in the lease, Shoppers News gave notice of its election to purchase

the Shoppers News building and tendered into court the $6,000 purchase price. Briscoe contended that the option had not been exercised properly but the chancery court entered an order directing specific performance. This order was appealed to the Court of Appeals which affirmed the decree of the chancellor but expressly stated that it did not purport to deal with any issues which remained pending. Upon remand the chancellor entered an order directing Briscoe to execute and deliver to Shoppers News a warranty deed to the leased property "free of all liens and encumbrances."

After Shoppers News made its last payment of rent under the lease agreement Briscoe defaulted on the payments of her notes to Bland Adkins and First National Bank and both mortgagees instituted foreclosure proceedings. The three cases were then consolidated for trial. The chancellor found that Briscoe owed Adkins in excess of $47,000 and was indebted to the First National Bank of Little Rock for a balance in excess of $6,900 and ordered the entire five-acre tract sold by the Commissioner. In that decree the court also awarded an attorney's fee of $670 to Adkins and $695 to First National Bank of Little Rock.

After that decree was entered counsel for Briscoe and the mortgagees pointed out that there were errors in the decree which should be corrected. The chancellor then entered an amended and substituted decree in which it granted Adkins judgment against Briscoe for over $53,000, ordered an attorney's fee of $5,300, corrected a description of the five-acre tract and the mortgage to the First National Bank of Little Rock, granted the bank judgment in the amount of $7,000, awarded it an attorney's fee in the amount of $700, recited that "by agreement of the parties all of the lands would be sold in one tract," and reserved control of the cause for further orders as may be necessary to protect the rights of the parties after the report of the Commissioner. Briscoe appeals from all orders entered in the consolidated cases. Shoppers News does not cross-appeal.

The appellant first contends that the chancellor erred in his construction of the lease purchase agreement and in directing her to execute a warranty deed "free and clear of all

liens and encumbrances." She argues that the contract did not provide for a deed free of encumbrances but only a "warranty deed showing clear and merchantable title." She argues that one can convey property subject to a mortgage by warranty deed and that such deeds providing for an assumption of the mortgage are common. This argument presupposes the validity of her contention that the clause in question provided for an assumption by Shoppers News. In this regard she argues that as that provision gave Briscoe a right to default, that language imposed on Shoppers News the duty to assume in the event of default. The provisions on which she relies merely gave Shoppers News a right to protect its own interest. It did not impose any obligation to assume the mortgage. We conclude that the provisions referred to required that Briscoe convey by a warranty deed containing general warranties against all defects and encumbrances. We find no error in the chancellor's ruling.

The appellant next contends that the chancellor erred in not ruling on the scope of the easement granted to Shoppers News. The order of the court provided that the easement be thirty feet wide and run along the south line of the leased premises extending eastwardly across the remaining lands to Mabelvale Pike. It declared that appellant must not interfere with the use of that portion of it running across her lands and that Shoppers News must not interfere with her use of the strip. The easement was clearly defined in the court's order.

Appellant argues that the chancellor should have ruled further because there was evidence that Shoppers News had been using the easement for purpose other than ingress and egress. She argues that Shoppers News had used it for additional parking spaces as well and that an easement granted for one purpose might not be used for another. Our review of the record does not disclose whether this issue was ever pled or argued in the court below. Appellant did make one passing reference to parking on her property. We do not consider this point sufficiently raised to warrant our consideration of it for the first time on appeal.

With regard to the foreclosure action the appellant

contends that the chancellor erred in failing to order the Shoppers News property sold separately and the proceeds from it first applied to the debt before her remaining lands were sold. Secondly, she argues that her homestead should have been carved out of the total tract and not sold at all unless absolutely essential. Thirdly, she argues that the lien to the First National Bank of Little Rock extended only to a portion of the property and it should be sold separately and before the balance of her lands, and finally that the decree did not set forth the rights of the parties to the surplus or deficit proceeds of the sale. While we find no merit to any of these contentions we do not address them because the record shows that the appellant consented to these terms of the amended decree at the time that it was entered.

The chancellor recited in his decree:

That the lien of First National Bank of Little Rock is on land included in the lien of plaintiff Bland Adkins. *By agreement of the parties, all of the land shall be sold in one tract,* being the larger tract upon which Bland Adkins has a lien. [Emphasis supplied.]

The record amply sustains this finding of the court. After the amended decree was entered the appellant filed a "Motion for Rehearing on Attorney's Fees" in which she recited that the amended decree was a proper one in all respects except in its provision for attorney's fees. She recited:

In the presence and at the suggestion of the court, the parties to the case have *agreed to the entry of a modified decree* correcting the technical errors of description in the earlier decree. *Ms. Briscoe agreed that no appeal would be prosecuted from such a corrected decree.* Counsel for Ms. Briscoe approved these procedures, the accommodations suggested, and the entry of a decree correcting the earlier decree so that the matter could go to sale in foreclosure of Ms. Briscoe's equity of redemption. [Emphasis supplied.]

Having agreed to the entry of the decree containing

such an order of sale the appellant is in no position to present the arguments contained in her brief. Even if the action of the chancellor in ordering the land sold as one tract was incorrect, it is well settled under the doctrine of invited error that appellant may not complain on appeal of an erroneous action of the chancellor if he has induced, consented to or acquiesced in that action. *Missouri Pacific Railroad Co.* v. *Gilbert,* 206 Ark. 683, 178 S.W.2d 73 (1944); *J. I. Case Co.* v. *Seabaugh,* 10 Ark. App. 186, 662 S.W.2d 193 (1983).

The appellant next argues that the chancellor erred in "failing to consider appellant's motion for rehearing on attorney's fees or otherwise explain the increase in fees awarded the attorney for Bland Adkins." In the original decree an award of $670 in attorney's fees was awarded. As that decree contained certain technical errors already referred to, an amended and substituted decree was entered in which Bland Adkins was awarded a $5,300 attorney's fee. Although appellant's pleading was styled "Request for Rehearing on Attorney's Fees" we conclude that she did not in fact ask for a hearing but only that the chancellor reconsider his ruling on that issue.

In her motion the appellant asserted that she was "not unappreciative of those difficulties encountered by the appellees in the foreclosure" and agreed that the fee of $500 that was allowed in the original decree was inadequte to compensate the attorneys for their services and should have been increased. She asserted that the sum of $5,300 awarded by the court was excessive for the number of hearings and the amount of time, investigation, preparation and "post-trial windup" involved in this case. She did not ask for a hearing on the issue but submitted a corrected amended decree in foreclosure which would have allowed a fee of $1,500. This motion was filed subsequent to her notice of appeal and no mention of it was made in the notice.

It is not necessary in every case to have a hearing on the reasonableness of an attorney's fee awarded by the court. The court can apply its own general knowledge of the proceedings in determining the amount of attorney's fee and we

recognize the superior position of the trial judge to make the determination because of its acquaintance with the record and the quality of services rendered. There is no fixed formula or policy to be considered in arriving at these fees other than the rule that the appropriately broad discretion of the trial court should not be abused. *Farm Bur. Mut. Ins. Co. v. Kizziar,* 1 Ark. App. 84, 613 S.W.2d 401 (1981); *Equitable Life Assur. Society* v. *Rummell,* 257 Ark. 90, 514 S.W.2d 224 (1974). It is only where the trial court denies a timely request for a hearing on the issue of attorney's fees that we have remanded the cause for that purpose. *Farm Bur. Mut. Ins. Co.* v. *Kizziar,* supra; *Thos. Jefferson Ins.* v. *Stuttgart Home Ctr.,* 4 Ark. 75, 627 S.W.2d 571 (1982).

We find no error.

MAYFIELD, C.J. and COOPER, J., agree.