Dale R. GORDON, Personal Rep. of
The Estate of Martha Ellen GORDON
*v.* CROWN CENTRAL PETROLEUM CO.

84-137                                    679 S.W.2d 192

Supreme Court of Arkansas
Opinion delivered November 13, 1984

*Michael C. Carter* and *Roy Whitehead, Jr.,* for appellant.

*Warner & Smith,* by: *Gerald L. DeLung,* for appellee.

P. A. HOLLINGSWORTH, Justice. The appellant is the owner of land in Sebastian County, Arkansas, Section 30, Township 6 North, Range 31 West. The appellee is the lessee of a mineral lease on the land owned by the appellant. Appellant, the plaintiff in the trial court, seeks the remedy of cancellation of the lease and an accounting of all proceeds arising from the production of natural gas on the property in question. The cause of action is based on the pooling clause of the lease limiting the lessee to pooling lands up to a maximum of 660 acres. The appellee admits that the total acreage pooled comprised 726.92 acres but asserts that this was done pursuant to an order of the Arkansas Oil & Gas Commission and that compliance with the order is not a breach of the lease. Both parties moved for a summary judgment and the trial court granted the appellee's motion. This appeal is from that order and is before us under Sup. Ct. R. 29 (1) (n). We affirm.

This case presents a question of first impression in Arkansas. The principal issue is a question of precedence in a case of conflict between an express provision in an oil and gas lease and regulations of the Arkansas Oil & Gas Commission.

The trial judge made the following findings of fact. The appellant owned about 38.86 acres in Section 29 and about 91 acres in Section 30 for a total of 129.86 acres, all of which was leased together. In 1970, Ferguson Oil

Company acquired the leasehold interest and drilled and completed a producing gas well in Section 29 but not appellant's land. This production resulted in the Excelsior field being established by the Commission in an area that included Section 29 and Section 30. The Commission also issued Field Rules, Units, and Production Allocations pertaining to the Excelsior field. In 1979, Westland Exploration Co. applied to the Commission for integration of appellee's leasehold interest in a drilling unit in Section 30. The integration resulted in the drilling unit of 726.92 acres.

The trial court held that the parties by their lease instrument contemplated and provided for such conflicts by having a "governmental regulations" or "force majeure" clause in the lease and that the pooling clause applies to voluntary pooling only. The Commission's order created a drilling unit which exceeded the acreage limitation for voluntary pooling and created a conflict with the lease's pooling clause. This conflict was resolved by the governmental regulations clause in favor of the commission order. The court found that the lease is therefore valid and there is no breach.

The two paragraphs of the lease which are the center of this dispute read as follows:

[THE POOLING CLAUSE:]

Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said lease premises so as to promote the conservation of oil, gas or other minerals in and under and that may be produced from said premises, *such pooling to be of tracts contiguous to one another and to be into a unit or units not exceeding 45 acres each in the event of an oil well, or into a unit or units not exceeding 660 acres each in the event of a gas well;* or Lessee

may, at its option and without Lessor's joinder, pool or combine the acreage covered hereby, or any portion thereof, with other land, lease or leases so as to establish a cooperative or unit plan, or plans of development which would include land owned by the United States, regardless of size of such unit, following certification of such plan or plans by the Secretary of the Interior. . .

## [THE GOVERNMENTAL REGULATIONS (FORCE MAJEURE) CLAUSE]

*. . . All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations,* and this lease shall not be terminated, in whole or in part, nor lessee held liable in damages, for a failure to comply therewith, if compliance is prevented by, or if such failure is the result of, any such Law, Order, Rule or Regulation. (emphasis added).

A covenant has been defined as an agreement calling "for the performace or nonperformance of some specified duty" which "may constitute an agreement to do or not to do a particular act." 20 Am Jur 2d *Covenants, Conditions, Etc.,* § 1 (1965). Under this definition, the Oil & Gas Commission's regulations are the equivalent of covenants since they call for the performance of a specified duty — pooling the lessee's interest in the drilling unit with other lands. In the force majeure clause the parties provided that covenants in the lease were subject to all state and federal laws and regulations. The clause is therefore applicable to the Commission's regulations as well.

The appellant's second argument is that there is no conflict between the commission order and the pooling clause. Rather he maintains the issue is who had the right to commit the acreage owned by appellant after reaching the 660 acre limitation in the pooling clause. He argues that this question and the question of who owns the right to the production from the remaining 66.92 acres is between the lessor and the lessee. We disagree. The Commission,

through its regulations, ordered the land in question pooled, and the force majeure clause protected the appellee's compliance with that order. The responsibility for the size of the unit rests with the Commission rather than with the lessee. The trial court properly held under the Arkansas Conservation Act (Act 105 of 1939) the creation of the 726.92 acre drilling unit was a valid exercise of the State's police power.

The appellant's third argument is that the trial court erred in finding the pooling clause only applicable to voluntary pooling. The appellant maintains that the appellee's actions were voluntary in that he joined the integrated unit of his own accord, and that the trial court erred in finding the pooling to be compulsory.

The integration order was not obtained by the appellee; rather it was sought by a third party — Westland Exploration Co. In its order granting the integration, the Commission held that they had the "authority to grant said Petition and *force pool* and integrate the unleased mineral interests of said named parties," and that "therefore, it is *ordered* that . . . [a]ll of the oil and gas leasehold interests in the above described unit be and are *hereby integrated* into one unit. . . " (emphasis added).

In *Bibler Bros. Timber Corp.* v. *Tojac Minerals,* 281 Ark. 431, 664 S.W.2d 472 (1984), the Oil & Gas Commission granted a compulsory pooling order requested by a third party. The court found that there was no voluntary pooling by the lessee in those circumstances. The court quoted a Louisiana case to the effect that:

> voluntary pooling by the lessee would be within the contemplation of the parties, being expressly provided for in the lease. Conversely, a forced unitization and pooling order by the Commissioner would not be within the ambit of the intention of the parties. . . because no provision for such action existed in the lease.

Here, too, the Commission's order made the pooling compulsory.

There is no doubt that when a pooling or unitization agreement is imposed by compulsory process, the provisions of the agreement prevail over any inconsistent lease provision. 4 Williamn, *Oil & Gas Law* § 670.3 (1981); 4 Kuntz, *Oil & Gas,* § 48.3(k) p. 223 (1972): Annotation, 37 ALR2d § 2[f] (1954).

The appellee's actions therefore did not constitute a breach of the lease.

Affirmed.