CHICK-A-DILLY PROPERTIES, INC. of Camden; Gail Fanning and Nancy Fanning *v.* Thomas L. HILYARD

CA 92-1412                           856 S.W.2d 15

Court of Appeals of Arkansas
En Banc
Opinion delivered June 16, 1993

*Vickery, Landers & Lightfoot, P.A.*, for appellants.

*Crumpler, O'Connor & Wynne*, for William J. Wynne.

JOHN E. JENNINGS, Chief Judge. Chick-A-Dilly Properties, Inc. of Camden, Gail Fanning, and Nancy Fanning appeal from a summary judgment entered by the Columbia County Chancery Court for appellee, Thomas L. Hilyard. We find no error and affirm.

Appellants Gail Fanning and Nancy Fanning own interests in appellant Chick-A-Dilly Properties. Their deceased sister, Connie Fanning Hilyard, who also owned an interest therein, was appellee's wife. In 1988, Gail and Nancy entered into an agreement to purchase Connie's interest in the corporation and gave Connie two promissory notes which provided for monthly payments. The notes were secured by a stock pledge and a mortgage on real estate. The parties also entered into a sales contract, which provided as follows in paragraph 5:

> On each anniversary date during the five (5) years of this Contract the sales for the year ending June 8, 1988 shall be compared with those for the year ending on the anniversary date in question. After adjusting the difference in the sales figures for inflation, using the Consumer Price Index as published by the Department of Labor and as applicable to the geographic region of which Arkansas is a part, then in the event there is a twenty-five percent (25%) decrease in gross sales or a twenty-five percent (25%) increase in gross sales, the following adjustments shall apply:
>
> > a. In the event of a decrease of sales of twenty-five percent (25%) or more, verified by a certified audit by a C.P.A., then Buyer may, at its option, not be obliged to make any further payments to Seller, either under the purchase Promissory Note or the covenant not to compete.

After Connie died in 1989, appellants stopped making

payments on the promissory notes and the parties engaged in litigation. In 1991, the parties entered into a settlement agreement which provided that the monthly payments would resume in February 1991. This settlement agreement stated: "The parties shall continue to be bound by the terms of the Sales Contract for the next 50 months, commencing February 8, 1991 without penalty or prejudice to Chick-A-Dilly, Gail or Nancy."

In June 1991, appellants again stopped making payments to appellee on the ground that there had been a twenty-five percent reduction in business compared with the first fiscal year of the sales contract. On July 8, 1991, appellee sued appellants on the notes and sought foreclosure against the property securing them. In their answer, appellants asserted that there had been a twenty-five percent drop in gross sales and, pursuant to the sales contract, appellants were required to make no further payments to appellee.

Appellants moved for summary judgment, arguing that there was no genuine issue of material fact regarding the enforceability of paragraph 5 of the sales contract. They submitted the affidavit of Laura Tucker, a certified public accountant, who stated that an audit revealed that there had been a twenty-five percent or greater decrease in sales for the corporation for the fiscal year ending June 8, 1991, when compared to the fiscal year ending June 8, 1988. Appellants also attached a copy of the sales contract, the promissory notes, the security agreement and pledge, the mortgage, appellants' responses to requests for admissions, the settlement agreement, a schedule prepared by Laura Tucker setting forth the results of the audit, Gail's affidavit, a letter from Gail and Nancy to appellee, and Nancy's affidavit.

Appellee also moved for summary judgment. In his motion, he questioned the reliability of Laura Tucker's audit and the methodology she employed in calculating the alleged twenty-five percent decrease in sales. Appellee also asserted that she had utilized the wrong Consumer Price Index in making her calculations. In support of this assertion, appellee attached the deposition of Laura Tucker and the affidavit of Dr. Charles E. Venus, a consulting economist, who stated:

### 3.

I know to my personal knowledge that there are in excess of one-hundred (100) such indexes which require those persons engaged in the field of my profession to determine which index should be utilized as being most correctly applicable for a specific reference purpose;

. . . .

### 5.

That under the provisions of Paragraph 5 such Sales Contract requires the comparative calculation to be based upon the index identified as CPI-U (for all urban consumers) or CPI-W (for urban wage earners and clerical workers) within the Southern geographic region of which Arkansas is a part;

### 6.

That calculating the sales comparison as of the anniversary date specified within said Contract under the Consumer Price Indexes published by the U.S. Department of Labor identified as CPI-U and CPI-W, respectively, applicable to the South for the relative dates yield the following conclusions:

|            | CPI-U South | CPI-W South |
|------------|-------------|-------------|
| June, 1988 | 116.1       | 115.5       |
| June, 1991 | 132.8       | 131.8       |

Dividing the percentage change between the two periods set forth above results in the following percentage adjustment to be applied.

$$\frac{132.8}{116.1} = 1.1438 \text{ or } 14.38\% \qquad \frac{131.8}{115.5} = 1.1411 \text{ or } 14.11\%$$

### 7.

I have likewise been furnished a copy of Exhibit 2 as annexed to the deposition of Laura Tucker as taken in the above case on April 29, 1992, and of her Affidavit with Schedules attached as subscribed before a Notary Public

under date of the 19th day of December, 1991; as reflected therein, sales for the year ending 6/8/88 were $756,959.33 which, as adjusted for comparative purposes to sales for the period ending June 8, 1991, would be as follows based upon the above indexes:

CPI-U  $756,959.33 X 1.1438 = $865,810.08

CPI-W  $756,959.33 X 1.1411 = $863,766.29

If the adjusted sales decreased by twenty-five percent (25%) as specified within Paragraph 5 of the aforesaid Contract, then sales would be as follows:

$865,810.08 X .75 = $649,357.56

$863,766.29 X .75 = $647,824.72

8.

The Schedule attached as Exhibit 2 to the deposition of Laura Tucker indicates actual sales for the contract year ending on the anniversary date of June 8, 1991, to be $650,544.12, which exceeds or is greater than the total sales adjusted under either of the above price indexes after reducing by twenty-five percent (25%) the sales otherwise reflected as of the anniversary date of June 8, 1988.

9.

The conclusion therefore necessarily follows that Paragraph 5 of said Sales Contract has no application as the sales decrease based upon such comparison is less than the twenty-five percent (25%) as specified therein as likewise evidenced by the recalculation made by Laura Tucker reflected within the handwritten figures appearing upon Exhibit 2 annexed to her deposition.

Appellants responded to appellee's motion for summary judgment by attaching another affidavit from Laura Tucker with the results of an independent auditor's report dated June 26, 1992, and by providing the affidavit of Robert Marsh, a consulting economist, who stated:

The Size D index for the South region is a better

measure of inflation for El Dorado and Magnolia than the other "size" indices for the south region or the combined index for all sizes for the entire south region used by Charles E. Venus. Of all the indices applicable to the geographic region of which Arkansas is a part, the Size D index is the best measure of inflation for the El Dorado and Magnolia areas.

. . . .

The conclusion therefore necessarily follows that Paragraph 5 of said Sales Contract applies as the sales decrease based upon such comparison is more than the twenty-five percent (25%) as specified therein.

The chancellor granted summary judgment for appellee after hearing the parties' arguments on their motions and noted that the case turned on the construction of the wording contained within paragraph 5 of the sales agreement. He stated:

When making the comparison of 1988 with 1991, using the Consumer Price Index, defendants used the C.P.I. applicable for "size D" non-metropolitan areas in the South Region with a population of less than 50,000. The rationale being that cities of El Dorado and Magnolia fall in that category. The plaintiff contends that the C.P.I. for the entire Southern Region of which Arkansas is a part should have been used.

It may well be that the C.P.I. applicable for "size D" non-metropolitan areas is more accurate to determine the inflation for El Dorado and Magnolia. However, the plain wording of paragraph 5 of the sales contract does not call for that determination. It states that the C.P.I. to be used is the one that includes Arkansas. The C.P.I. utilized by the defendants does not include Arkansas. It includes cities of certain sizes in Arkansas. To reach the same conclusion as defendants regarding the appropriate C.P.I. would give paragraph 5 of the sales agreement a meaning which it simply does not contain.

This court therefore finds and concludes that the defendants did not properly compare the sales of 1991 with 1988 as required by the sales agreement and the tender of

stock rather than payments pursuant to the promissory notes to plaintiff was not pursuant to the sales agreement.

Appellants argue on appeal that it was inappropriate for the chancellor to enter summary judgment for appellee because there was a genuine issue of material fact as to the meaning of paragraph 5 of the sales contract. Appellants argue that the question of which Consumer Price Index should apply was an issue of fact which required an evidentiary hearing and urge this court to reverse and remand this case for trial for the taking of evidence as to the parties' intentions in that regard. In response, appellee argues that, having moved for summary judgment, appellants waived this issue and cannot argue it on appeal under the doctrine of invited error.

The leading case in Arkansas on the filing of cross motions for summary judgment is undoubtedly *Wood* v. *Lathrop*, 249 Ark. 376, 459 S.W.2d 808 (1970). In an opinion written by Justice George Rose Smith the court said:

> Both Mrs. Wood and the Lathrops filed motions for summary judgment, setting forth the facts substantially as we have outlined them. We may say at this point that we do not agree with the appellees' contention that a party who files a motion for summary judgment after his adversary has filed such a motion thereby concedes that no material issue of fact exists in the case. That argument is opposed both to reason and to authority. When such cross motions are filed each movant is contending for the purpose of his own motion that there is no material issue of fact in the case, but there is no reason at all to say as an inflexible rule that he also admits the nonexistence of any factual issue with respect to his adversary's motion. Our summary judgment statute was copied from Rule 56 of the Federal Rules of Civil Procedure, with respect to which this statement is made in Barron and Holtzoff's Federal Practice & Procedure, § 1239 (Wright's Ed., 1958):
>
>> The fact that both parties have moved for summary judgment does not establish that there is no issue of fact. A party may concede that there is no issue if his legal theory is accepted and yet maintain that there is a

genuine dispute as to material facts if his opponent's theory is adopted. Thus, both motions should be denied if the court finds that there is actually a genuine issue as to a material fact.

249 Ark. at 379, 459 S.W.2d at 809-10.

The short form of the rule in *Wood* v. *Lathrop* may be found in 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2720, at 19 (2d ed. 1983): "[T]he mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury." There are sound reasons for the rule:

For example, a defendant moving for summary judgment on the ground that the claim is barred by the statute of limitations may contend that there is no issue of fact as to that defense, but if the defense is held insufficient as a matter of law, he still may argue that there is an issue of fact as to his liability on the claim asserted against him.

Wright § 2720 at 21-22.

The general principle set forth in *Wood* has been subsequently followed in the supreme court and in this court. *Dickson* v. *Renfro*, 263 Ark. 718, 569 S.W.2d 66 (1978); *Moss* v. *Allstate Ins. Co.*, 29 Ark. App. 33, 776 S.W.2d 831 (1989); *Heritage Bay Property Regime* v. *Jenkins*, 27 Ark. App. 112, 766 S.W.2d 624 (1989).

There are however decisions of both courts holding that an appellant may find himself barred from raising on appeal the argument that an issue of fact remains to be decided when he has contended to the contrary in the trial court. In *Bibler Brothers Timber Corp.* v. *Tojac Minerals, Inc.*, 281 Ark. 431, 436, 664 S.W.2d 472, 474-75 (1984), the court said:

Appellant's final point for reversal is that the trial court erred in granting judgment on the pleadings because material issues of fact were unresolved. Specifically, appellant alleges the issue in dispute is whether the lease was subject to forfeiture due to appellees' failure to drill and develop the non-unitized acreage. However, the failure to drill and develop was waived when the appellant asserted positively in its Motion for Summary Judgment:

"That there is no genuine issue as to any material fact and that Plaintiff [appellant] is entitled to a judgment as a matter of law."

In *Neel* v. *Citizens First State Bank of Arkadelphia*, 28 Ark. App. 116, 120, 771 S.W.2d 303, 305 (1989), this court said:

Appellant's argument that issues of fact remain to be tried is entirely inconsistent with her position below. First, appellant offered no proof in response to appellee's affidavits and exhibits. Second, appellant clearly waived this issue and agreed with appellee that no material issues of fact remained for trial. Accordingly, appellant may not assert this argument on appeal. *See Briscoe* v. *Shoppers News, Inc.*, 10 Ark. App. 395, 401, 664 S.W.2d 886 (1984) (one may not complain of action he had induced, consented to, or acquiesced in).

We think the cases are entirely reconcilable. The case which comes closest to explaining the distinction is *Schlytter* v. *Baker*, 580 F.2d 848, 849-50 (5th Cir. 1978):

Appellant is not estopped by the mere filing of his motion for summary judgment from now asserting that there are genuine issues of fact. As a general rule the filing by both parties of opposing motions for summary judgment will not warrant a court's granting either party's motion if, indeed, there exists a genuine factual dispute concerning a material issue. . . .[T]he rationale of this rule lies in the fact that each party may be basing its motion on a different legal theory dependent on a different set of material facts.

When the parties proceed on the same legal theory and on the same material facts, however, the basis for the rule disappears. Thus, in qualifying the general rule, this Court has said:

Nonetheless, cross motions may be probative of the non-existence of a factual dispute when, as here, they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.

(Citations omitted.)

In the case at bar, trial counsel for the appellants, during his argument on the cross motions for summary judgment made it clear to the trial court that the dispute between the parties focused on which consumer price index applied and that that issue was ready for the court to decide as a matter of law. Here, as in *Schlytter*, the parties proceeded on the same legal theory and the same material facts. Although we do not believe the trial judge was thereby bound to grant summary judgment to one side or the other, under the circumstances presented here the appellants may not argue that the court erred in deciding the issue as one of law.

Affirmed.

MAYFIELD and COOPER, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I must respectfully dissent from the opinion of the majority in this case. The opinion recognizes that the leading case in Arkansas pertaining to the filing of cross motions for summary judgment is *Wood* v. *Lathrop*, 249 Ark. 376, 459 S.W.2d 808 (1970), where the court agreed that "the fact that both parties have moved for summary judgment does not establish that there is no issue of fact." 249 Ark. at 379, 459 S.W.2d at 809.

The majority opinion also acknowledges that "the general principle set forth in *Wood* has been subsequently followed" in the Arkansas Supreme Court and the Arkansas Court of Appeals. The majority opinion, however, fails to follow these decisions on the basis that there are other "decisions of both courts holding that an appellant may find himself barred from raising on appeal the argument that an issue of fact remains to be decided when he has contended to the contrary in the trial court."

Taking a close look at the situation in the present case, it is clear that the appellants filed a motion for summary judgment and alleged, as the majority states, that there "was no genuine issue of material fact regarding the enforceability of paragraph 5 of the sales agreement." They submitted with their motion the affidavit of Laura Tucker, a certified public accountant, who said an audit revealed there had been a 25 percent or greater decrease in sales during the last fiscal year when compared to the fiscal year ending June 8, 1988, and under paragraph 5 of the sales

agreement the appellants were not required to make further payments to the appellee.

The appellee also moved for summary judgment. In his motion it was alleged that Laura Tucker had used the wrong Consumer Price Index, and the appellee attached an affidavit of Dr. Charles Venus, a consulting economist. Among other things, this affidavit stated that there were "in excess of one-hundred (100) such indexes which require those persons engaged in the field of my profession to determine which index should be utilized as being most correctly applicable for a specific reference purpose."

The appellants responded to appellee's motion and attached the affidavit of Robert E. "Jay" Marsh, a consulting economist, who stated:

> The Size D index for the South region is a better measure of inflation for El Dorado and Magnolia than the other "size" indices for the south region or the combined index for all sizes for the entire south region used by Charles E. Venus. Of all the indices applicable to the geographic region of which Arkansas is a part, the Size D index is the best measure of inflation for the El Dorado and Magnolia areas.

The chancellor granted summary judgment for appellee after hearing the parties' arguments on their motions and noted that the case turned on the construction of the wording contained within paragraph 5 of the sales agreement. He stated:

> When making the comparison of 1988 with 1991, using the Consumer Price Index, defendants used the C.P.I. applicable for "size D" non-metropolitan areas in the South Region with a population of less than 50,000. The rationale being that cities of El Dorado and Magnolia fall in that category. The plaintiff contends that the C.P.I. for the entire Southern Region of which Arkansas is a part should have been used.

> It may well be that the C.P.I. applicable for "size D" non-metropolitan areas is more accurate to determine the inflation for El Dorado and Magnolia. However, the plain wording of paragraph 5 of the sales contract does not call

for that determination. It states that the C.P.I. to be used is the one that includes Arkansas. The C.P.I. utilized by the defendants does not include Arkansas. It includes cities of certain sizes in Arkansas. To reach the same conclusion as defendants regarding the appropriate C.P.I. would give paragraph 5 of the sales agreement a meaning which it simply does not contain.

I find no inconsistency in appellants' argument on appeal that a factual question remains, even though they unsuccessfully moved for summary judgment in the trial court. The point involved is the meaning of that part of paragraph 5 which provides that sales in the fiscal year ending June 8, 1988, would be compared with those for the year ending on the anniversary date in question "after adjusting the difference in the sales figures for inflation, *using the Consumer Price Index as published by the Department of Labor and as applicable to the geographic region of which Arkansas is a part.*" (Emphasis added.)

On motion for summary judgment, the court is authorized to ascertain the plain and ordinary meaning of a written instrument after any doubts are resolved in favor of the party moved against, and if there is any doubt about the meaning, there is an issue of fact to be litigated. *Moore* v. *Columbia Mutual Casualty Ins. Co.*, 36 Ark. App. 226, 228, 821 S.W.2d 59, 60 (1991). When a contract is unambiguous, its construction is a question of law for the court. *Id.* The initial determination of whether a contract is ambiguous rests with the court. *Id.* When the intent of the parties as to the meaning of a contract is in issue, summary judgment is particularly inappropriate. *Camp* v. *Elmore*, 271 Ark. 407, 408-09, 609 S.W.2d 86, 87 (Ark. App. 1980). A latent ambiguity arises when the contract on its face appears clear and unambiguous but collateral facts exist which make its meaning uncertain. *Countryside Casualty Co.* v. *Grant*, 269 Ark. 526, 530, 601 S.W.2d 875, 877 (1980). Parol evidence is admissible not only to bring out the latent ambiguity but to explain the true intentions of the parties. 269 Ark. at 530, 601 S.W.2d at 877-78. When the terms of a written contract are ambiguous, the meaning of the contract becomes a question of fact. *Stacy* v. *Williams*, 38 Ark. App. 192, 196, 834 S.W.2d 156, 158 (1992).

Although paragraph 5 appears unambiguous on its face, the

motions and affidavits filed by the parties clearly reveal that there is a latent ambiguity as to the meaning of the paragraph. The intent of the parties in regard to the use of the Consumer Price Index is unclear. Specifically, the meaning of the language "using the Consumer Price Index as published by the Department of Labor and as applicable to the geographic region of which Arkansas is a part" is ambiguous under the record before us in this case. In *Moss* v. *Allstate Insurance Co.*, 29 Ark. App. 33, 35, 776 S.W.2d 831, 833 (1989), this court relied upon *Wood* v. *Lathrop*, *supra*, and stated that the fact both parties moved for summary judgment did not establish there was no issue of material fact, and if there is any doubt as to whether there are issues of fact to be tried, both motions for summary judgment should be denied. That, in my judgment, is the situation in the present case.

The cases cited by the majority as holding that the appellants are barred from asserting on appeal that there is a genuine issue of fact to be decided are clearly distinguishable from the instant case. In *Bibler Brothers Timber Corp.* v. *Tojack Minerals, Inc.*, 281 Ark. 431, 664 S.W.2d 472 (1984), the appellant sought to cancel part of an oil and gas lease on the basis that a producing well on a drilling unit which had been pooled with other drilling units by an order of the Arkansas Oil and Gas Commission did not keep the lease in force as to the land in the other units. On appeal from an adverse judgment granted "on the pleadings" the appellant also argued that there was an unresolved factual question as to whether there was a lease forfeiture due to the appellee's failure to drill and develop the non-unitized acreage. The court on appeal held that issue was waived because the appellant had "asserted positively in its Motion for Summary Judgment" that there was "no genuine issue as to any material fact" and that it was entitled to judgment as a matter of law. That is a different situation from the case at bar.

Here, each party wanted a summary judgment based upon that party's view of the meaning of the language in paragraph 5 of the sales contract which provided that sales figures would be compared after adjusting the difference in the figures for inflation "using the Consumer Price Index as published by the Department of Labor and as applicable to the geographic region of which Arkansas is a part." Relying on what each party thought were the

proper figures as required by paragraph 5, each party alleged there was no material fact for trial. The trial court selected one set of figures which the judge found to be applicable as a matter of law. The other party appeals on the grounds that the judge selected the wrong figures. The appellate court can plainly see that each party is using a different price index, and it is clear that the correct index is a question of fact. Even the appellee's expert says there are more than 100 such indexes and that a professional determination is required to select the index most correctly applicable for a specific purpose. Under these circumstances paragraph 5 contains a latent ambiguity, and a genuine issue of fact exists; therefore, both motions for summary judgment should have been denied.

The case of *Neel* v. *Citizens First State Bank of Arkadelphia*, 28 Ark. App. 116, 771 S.W.2d 303 (1989), relied upon by the majority opinion, does not hold that a party who has filed a motion for summary judgment is barred from contending on appeal that there is a genuine issue of material fact to be determined. In *Neel* the appellate court simply pointed out that the appellant did not file any affidavit to counter those filed by the appellee to support its motion for summary judgment and that appellant's counsel told the trial court "the reason we didn't file anything, we don't have any disagreement on the facts. . . . we're not arguing any of the facts, so there's no point in swearing." 28 Ark. App. at 119, 771 S.W.2d at 305. Therefore, the opinion in *Neel* stated that the appellant had agreed there were no material issues of fact to be determined, and the appellant could not argue to the contrary on appeal. 28 Ark. App. at 120, 771 S.W.2d at 305. And the case of *Briscoe* v. *Shoppers News, Inc.*, 10 Ark App. 395, 664 S.W.2d 886 (1984), cited in *Neel*, holds that a party who consents to the provisions in a trial court decree cannot complain on appeal of the court's action which the party induced, consented to, or acquiesced in. *See* 10 Ark. App. at 401, 664 S.W.2d at 890.

Thus, *Neel* and *Briscoe* do not, in my view, lend any support to the majority opinion. A closing citation to a federal case in the majority opinion simply says that cross motions *may* be probative of the non-existence of a factual dispute. The general rule, however, is set out in 28 *Federal Procedure, L.Ed.* § 62-586 at 71-72 (1984), as follows:

The situation where the parties to an action file cross motions for summary judgment should be distinguished from that where they submit the issues to the court for its determination. Where both parties move for summary judgment it does not mean that they agree that there are no material issues of fact, or that if one motion is rejected the other is necessarily justified, or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist.

I would hold that there is a genuine issue of material fact to be determined in the case before us; therefore, I dissent from the decision set out in the majority opinion.

COOPER, J., joins in this dissent.