McILROY BANK AND TRUST, an Arkansas Banking Corporation *v.* Paul A. MAESTRI

88-198                                        759 S.W.2d 808

Supreme Court of Arkansas
Opinion delivered November 21, 1988

*Robert R. Estes*, for appellant.

*Cypert, Crouch, Clark & Harwell,* by: *Larry J. Thompson,* for appellee.

JACK HOLT, JR., Chief Justice. This appeal is from the trial court's judgment discharging appellee Paul A. Maestri from liability on a promissory note held by the appellant, McIlroy Bank and Trust, following an extension of the note to which Maestri, an accommodation maker, did not consent. The trial court also determined that the extension materially altered the provisions of the note. McIlroy argues the court should have found that Maestri consented to the extension and that our Uniform Commercial Code requires that alterations of the note must have been not only material but also fraudulent.

We affirm because it is clear under our Uniform Commercial Code that Maestri was discharged once McIlroy extended the note a second time without Maestri's consent. As such, it is unnecessary to consider the remaining points raised by the parties.

The promissory note in issue was executed on February 2, 1985. The amount of the note was $15,000.00, which was to be paid on demand. If no demand was made, payment was to be made after three months. The stated interest rate was thirteen percent (13%) per annum. The note identified appellant McIlroy as the lender and Danny Maestri as the borrower. In the lower right hand corner of the note two signatures appear — that of Danny Maestri and that of the appellee Paul Maestri.

Our first concern is the capacity in which Paul Maestri signed the note. The trial court correctly determined that Maestri signed as an accommodation maker. Ark. Code Ann. § 4-3-415 (1987) deals with the contract of an accommodation party. Subsection (3) provides:

> As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

Under the facts before us, McIlroy was a holder, not a holder in due course. As such, oral proof of the accommodation

status of Paul Maestri was permissible. Testimony by Danny Maestri and Paul Maestri clearly established that Paul Maestri signed the note only to lend his name to the borrower, Danny Maestri, so as to facilitate approval of the loan. We also find instructive the following language from *Womack* v. *First State Bank of Calico Rock*, 21 Ark. App. 33, 728 S.W.2d 194 (1987):

> [T]he most significant element in determining whether a party to a note is an accommodation party is the intention of the parties . . . and where a person 'receives no direct benefit from the execution of the paper it is likely that he will be regarded as an accommodation party.'

Our review of the record supports the trial court's finding that Paul Maestri received no benefit from the proceeds of the note. In this regard, *see* White & Summers, *Uniform Commercial Code*, § 13-13 (2d ed. 1980).

In sum, Maestri signed as an accommodation maker. If he is liable on the note, it is only in the capacity in which he signed. Ark. Code Ann. § 4-3-414(2) (1987).

Our next concern is what effect extensions of the note had on Paul Maestri's liability as an accommodation maker. On June 4, 1985, the maker of the note, Danny Maestri, signed an extension agreement extending the due date of the original note for a period of three months with interest on the remaining principal at 12.5% per annum. Paul Maestri gave his consent to that extension by including his signature. A second extension agreement was signed by both Maestris on August 26, 1985, which extended the note for an additional three months until November 27, 1985.

Sometime in November, McIlroy's loan officer, George Edwards, requested that Paul Maestri sign a third extension agreement. Maestri indicated that he did not want to extend his obligation on the note any further and that the bank should collect from the borrower, Danny Maestri. Later, a third extension agreement was executed between the bank and Danny Maestri extending the note for an additional three months without Paul Maestri's signature agreement.

On April 29, 1986, a fourth extension agreement was executed by the bank and Danny Maestri, apparently without notice to Paul Maestri. This extension also provided that the note

would be due on demand. However, if no demand was made, payment was to be in 23 installments of approximately $659.00 beginning on May 15, 1986, and ending on April 15, 1988, with interest on the remaining principal at 11.50%. After Danny Maestri defaulted and filed in bankruptcy court, McIlroy brought suit against Paul Maestri.

The issue before us turns on the defenses which the accommodation maker, Paul Maestri, can assert against the holder of the note, McIlroy. Ark. Code Ann. § 4-3-606(1)(a) (1987) provides, in part:

> The holder discharges any party to the instrument to the extent that without such party's consent the holder:

> *Without express reservation of rights* releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or *agrees to suspend the right to enforce* against such person the instrument . . . . [Emphasis ours.]

■ The words "agrees to suspend the right to enforce" signify the granting of an extension of time for payment. Hence, the holder of the note, McIlroy, discharged *any party* to the instrument, including accommodation makers, to the extent that McIlroy granted an extension without the consent of the party or without an express reservation of rights. White & Summers, *Uniform Commercial Code*, § 13-14 (2d ed. 1980).

■ On the question of consent, Ark. Code Ann. § 4-3-118(f) (1987) provides:

> Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers.

In other words, an express provision for consent in the McIlroy note would be binding on the accommodation maker, Paul Maestri, and would authorize one extension for a period not longer than the term of the original note, unless otherwise specified.

The note contains the following provision:

**Obligations Independent** — I understand that my obligation to pay this note is independent of the obligation of any other person who has also agreed to pay it. You may release any of us, release any security, waive any right you might have against any of us, extend new credit to any of us, *renew this note,* or all of the above, without affecting my obligation to pay the loan amount. [Emphasis ours.]

As against Paul Maestri, the language "renew this note" could be construed as consent, which in turn authorized a single extension in November 1985 for a term identical to that contained in the original note. However, we find nothing in the provisions of the note which would rebut the language of section 4-3-118(f) and lead to the conclusion that multiple extensions were authorized. Accordingly, Paul Maestri cannot be considered as having consented to an extension of the note in April 1986, and under sections 4-3-606(1)(a) and 4-3-118(f) he was discharged from liability on the note.

With reasoning not entirely clear, McIlroy argues that the language "renew this note, *or all of the above*" (emphasis added) amounts to consent to multiple extensions. The case of *Gentry* v. *First American National Bank*, 264 Ark. 796, 575 S.W.2d 152 (1979), is cited as support. McIlroy further contends that Paul Maestri's conduct and signature agreement to the first two extensions operates to prevent his discharge on the note.

We find McIlroy's arguments as to course of conduct unpersuasive and not supported by the facts of record. Furthermore, our decision in *Gentry* v. *First American National Bank* is clearly distinguishable.

In *Gentry*, the language of the relevant agreement was as follows:

This guaranty is continuing, absolute and unconditional . . . . Liability hereunder is not affected or impaired *by any* surrender, compromise, settlement, release, *renewal, extension*, authorization, substitution, exchange, modification or other disposition . . . . [Emphasis ours.]

It was specifically recognized in *Gentry* that this language meant the guarantor's liability was not affected by "renewals or extensions." *Id.* at 799. No such language is before us now. *See also In*

*re Sanders*, 75 B.R. 757 (Bkrtcy. W.D. Ark. 1987) (construing language identical to that contained in the McIlroy note).

Because we conclude that Paul Maestri was discharged under the provisions of Ark. Code Ann. §§ 4-3-606(1)(a) and 4-3-118(f), we find it unnecessary to consider the remaining points raised by the parties.

Affirmed.

GLAZE, J., concurs.