Jeff MOBLEY *v.* John T. HARMON

90-355                                      803 S.W.2d 900

Supreme Court of Arkansas
Opinion delivered February 11, 1991
[Rehearing denied March 4, 1991.*]

*Robert E. Irwin*, for appellant.

---

*Robert E. Adcock,* for appellee.

ROBERT L. BROWN, Justice. The sole issue in this appeal is whether an accommodation maker who has paid off a promissory note owed a bank and been formally assigned that note can recover the amount paid against the co-maker of the note. The facts in this case are not in dispute, although the parties bitterly dispute the conclusions that can be drawn from those facts.

Appellant Jeff Mobley and appellee John Harmon had been friends for a long time, and in 1981 Harmon asked Mobley to co-sign a promissory note and assist him in getting a $10,000 loan from First National Bank of Russellville. The bank loan officer preferred to lend the money to Mobley, whom he knew, and have Harmon co-sign the note. On October 20, 1981, both parties signed a note as makers in the amount of $10,000. The proceeds of the loan, in the form of a cashier's check, went solely to Harmon as payee. The note was due and payable in full on April 20, 1982. Also, on October 20, 1981, Harmon gave Mobley a note in the amount of $10,000 due and payable in six months and conditioned on Harmon's failure to pay the Russellville bank. The bank note was not paid, and collection of the second note is not an issue in this case.

Harmon made payments on the loan and then defaulted, and Mobley subsequently assumed responsibility for the payments. These payments by both makers reduced the note principal to $6,776.77. The note was extended several times by the bank. The first four extension agreements were signed by both Harmon and Mobley and were dated April 23, 1982; October 22, 1982; April 21, 1983; and October 31, 1983.

In January, 1984, Harmon moved to Texas. Also in 1984 Mobley had open heart surgery. After Harmon's move, four additional extension agreements were signed by Mobley and the bank without Harmon's consent: May 14, 1984; December 10, 1984; July 8, 1985; and January 7, 1986. In the case of each of those extensions, Mobley testified that he did not get Harmon's signature because "I either couldn't find him or he refused to come back [from Texas], one or the other." Harmon testified that he refused to sign one of the extensions and "then he [Mobley] quit communicating with me." While in Texas Harmon filed for bankruptcy but intentionally did not schedule the Russellville

bank debt. Neither Mobley nor the Russellville bank filed claims in bankruptcy. Harmon returned to Arkansas in 1986.

The last extension agreement was signed by Mobley on January 7, 1986, and it extended the due date on the note to July 8, 1986. However, Mobley decided to pay off the note two days after signing the last extension and did so on January 9, 1986. On that same date the bank formally assigned its interest in the note to Mobley.

Mobley filed suit against Harmon on March 28, 1989, to recoup the amount paid to the Russellville bank. After a trial before the court, the judge held in favor of Harmon and dismissed Mobley's lawsuit on the basis that Harmon's liability was discharged under the Uniform Commercial Code.

We reverse the trial court's decision.

We begin by noting that Harmon and Mobley claim the same status as accommodation maker, and each party fervently asserts that the other was the primary maker. It is true that the bank clearly wanted Mobley as the primary maker because it had had no dealings with Harmon. But Harmon received the full benefit of the loan, which was undoubtedly orchestrated for his benefit.

We have said in recent cases that the intention of the parties is the most significant element in determining accommodation status, and where a person receives no direct benefit from an executed note, it is likely that he will be regarded as the accommodation party. *McIlroy Bank & Trust* v. *Maestri*, 297 Ark. 130, 759 S.W.2d 808 (1988); *Womack* v. *First State Bank of Calico Rock*, 21 Ark. App. 33, 728 S.W.2d 194 (1987). We therefore agree that the total circumstances support the trial court's determination that Mobley was the accommodation maker.

This case is then governed by the Uniform Commercial Code, and conflicting sections are involved. The Code first discusses liability between the accommodator and the person accommodated:

(5)   An accommodation party is not liable to the party accommodated, and if he pays the instrument has a

right of recourse on the instrument against such party.

Ark. Code. Ann. § 4-3-415(5) (1987). This section would appear to give Mobley clear recourse against Harmon.

Yet in a subsequent section the Code impairs that right of recourse and discharges certain parties to the note, including note holders, under facts which exist in this case. *See* Ark. Code Ann. § 4-3-606(1)(a) (1987). The particular defense that inures to Harmon's benefit is discharged under the impairment-of-recourse section:

> (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

> (a) Without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, . . .

Ark. Code Ann. § 4-3-606(1)(a) (1987).

That is precisely what occurred in this case. The bank agreed to suspend the right to enforce its note against Harmon, when it looked only to Mobley to sign the last four extension agreements. Harmon in no way consented to any extension after October 31, 1983. The Commercial Code is clear that the last extension agreed to by Harmon "authorized a single extension for not longer than the original period" unless otherwise specified. Ark. Code Ann. § 4-3-118(f) (1987). That would authorize an extension for six months, or until April 30, 1984. Beyond that date Harmon and Mobley were in default, and when the bank chose to extend the obligation four more times with only Mobley's agreement, it effectively released Harmon. This discharge defense was available to Harmon had the bank sought collection on the note.

We followed this same rationale in the *Maestri* case. There, the facts were different in that the bank (McIlroy) sued the accommodation maker who raised the impairment-of-recourse defense. The law as stated in *Maestri* applies to this case:

> The words "agrees to suspend the right to enforce"

> signify the granting of an extension of time for payment. Hence, the holder of the note, McIlroy, discharged any party to the instrument, including accommodation makers, to the extent that McIlroy granted an extension without the consent of the party or without an express reservation of rights.

297 Ark. at 134, 759 S.W.2d at 809. It makes no difference under section 4-3-606(1)(a) whether the holder of the note is suing the primary maker or the accommodation maker. Discharge under the circumstances still pertains and is a defense for Harmon against the bank. *See also Rogers v. Merchants & Planters Bank*, 302 Ark. 353, 789 S.W.2d 463 (1990).

■ This case, however, is distinguishable from *Maestri* and *Rogers* in one important respect. Here the Russellville bank assigned the note to the accommodator, Mobley, who became holder of the note. Ordinarily a holder takes a note assignment subject to all defenses which the maker had against the bank. *See* Ark. Code Ann. § 4-3-306 (1987); *Richardson v. Girner*, 282 Ark. 302, 668 S.W.2d 523 (1984). But the Code specifically gives an accommodation maker an independent cause of action against the party accommodated, as already shown in this opinion. *See* Ark. Code Ann. § 4-3-415(5) (1987). Mobley therefore is not suing Harmon merely in his status as note holder, but is suing him under the authority of a separate Code provision which empowers him to do so. Because of this independent status under section 4-3-415(5), Mobley's right of recourse is unencumbered by any defenses Harmon held against the bank.

The policy behind this result is certainly sound and is best illustrated in the following commentary:

> It also follows from the nature of the surety's undertaking that he is entitled to recover from the debtor any payment he is called on to make to the creditor. If a friend agrees to sign another's note and is ultimately made to pay that note to the creditor, curbstone equity tells us that he should have a cause of action against the person who actually benefited from the creditor's loan.

James J. White and Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code*, 2d Ed., § 13-16, p. 529

(1980).

In light of this reasoning we cannot agree with the trial court that Harmon's liability was automatically discharged *against all parties* when the note was extended without his consent. As already noted the discharge was a defense available to Harmon against the bank, and we have held in *Maestri* and *Rogers* that the defense is available to any nonconsenting party. But it was not a defense available against an accommodation party who is suing the party accommodated.

We reverse and remand the case to circuit court for judgment in favor of Mobley in accordance with this decision.

Reversed and remanded.

DUDLEY, Jr., not participating.