James Lee WITT and Lea Ellen Witt *v.* John M. GRAVES and Maggie Mae Graves, His Wife, and Harrison C. Graves and Joyce A. Graves, His Wife

89-344                                                    787 S.W.2d 681

Supreme Court of Arkansas
Opinion delivered April 23, 1990

---

*David H. McCormick*, for appellant.

*R. Kevin Barham*, for appellee.

Tom Glaze, Justice. The appellants filed a petition to quiet title in 80 acres in Logan County.[1] In response, the appellees filed

---

[1] These acres are located in Section 24, Township 7, north, Range 22 west, West $^1/_2$ of S.W. $^1/_4$.

a counterclaim asserting only a claim of ownership of the mineral rights under this property. The chancellor found that the appellants had established ownership by adverse possession of the surface rights of the 80 acres, but held the appellees owned the mineral rights in the acreage as a result of a reservation contained in a lost deed which had been executed in 1939 by appellees John's and Harrison's mother and guardian, Edna Graves. Appellants argue on appeal that the chancellor's finding was erroneous. We find no error and therefore affirm.

The abstract of title traces the history of this Logan County property starting in 1855 when the Untied States conveyed the property to the State of Arkansas for the use of construction of a railroad. In the years following, the property was transferred between a number of different railroad companies. However, in 1925 and 1926, title to the property in question was transferred by warranty deed to R. S. Graves, who was the father of appellees John and Harrison Graves. The next recorded deed involving this property is in 1974 from Coy and Hester Hodges to Loyd and Gladys Hodges. In 1979, a warranty deed was recorded from Loyd and Gladys Hodges to the appellants, James and Lea Witt.

Although there is no record of any conveyance of the disputed property between the years of 1926 and 1974, appellees claim title to the minerals by a lost deed. According to the appellees, their father, R. S. Graves still owned the property when he died intestate in 1934. Since John and Harrison were only nine and six at the time of their father's death, their mother, Edna Graves, was appointed the guardian of their estates. According to John Graves's testimony, his mother, by deed, sold the disputed property in 1939 to a family friend, John Raulston, and, in doing so, reserved all oil, gas and mineral rights.

It is a settled principle of law that those who claim under a lost deed must prove its contents by clear, satisfactory, and convincing proof. *See, e.g., Thompson* v. *Graves*, 281 Ark. 492, 665 S.W.2d 268 (1984). We have stated that parole evidence should show that the deed was duly executed as required by law, and should show substantially all its contents by clear, convincing and satisfactory evidence. *McCulloch* v. *McCulloch*, 213 Ark. 1004, 214 S.W.2d 209 (1948).

Because of the deaths and sickness of the other parties

involved, John Graves provided the only testimony to prove the existence of the lost deed. He testified that he was positive that his mother sold the 80 acres in question to a family friend, John Raulston, and that he knew a deed was prepared in connection with this sale. He further stated that Edna Graves had not acquired approval of the sale from the probate court so the sale was illegal.

Other evidence corroborates John's account of the lost 1939 deed reserving the mineral interests. According to his testimony, after the sale, Edna Graves, acting for herself and as guardian, executed mineral leases in 1942 and 1952. The record shows that both of these leases were approved by the probate court. Also, Edna Graves and her sons executed a mineral lease in 1957 when the sons had reached the age of majority. Further, according to John's testimony, Edna Graves in 1964 transferred her mineral interests to her sons by a mineral deed, and in turn they executed a mineral lease to a leasing company in 1981.

John further testified about a conversation he had with Coy and Loyd Hodges in 1956 in which the Hodgeses only claimed the surface rights to the property and recognized the Graveses' claim to the mineral interests. In fact, the 1974 deed from Coy and Hester Hodges to Loyd and Gladys and the 1979 deed from the Hodgeses to the appellants stated that they were "subject to all valid prior mineral reservations."

The tax history of the property is more confusing than helpful. Contrary to the law at that time, Logan County kept two separate records of the assessment of the surface acreage and the mineral acreage of the property. From the time of 1939 to 1956, there was no separate assessment of the mineral acreage from the surface. In 1956, the appellees apparently for the first time assessed the mineral acreage. After reviewing the evidence set out above, we cannot say that the chancellor's finding that the appellees proved the existence of the 1939 deed is clearly erroneous. ARCP Rule 52(a).

Even though the appellees proved the deed, the appellants argue that the severance of the mineral interests is void because the sale from Edna Graves, as guardian, to Raulston was illegal.While it is true that the failure of the parties to comply with the statutes governing the sale of a ward's land renders the

sale void, it has also been held that upon reaching majority, the ward may ratify the void sale. *McMillan* v. *Malvern Gravel Co.*, 136 F. Supp. 567 (W.D. Ark. 1955). Such ratification may be made by the ward's failure to do something to disaffirm the sale after he or she reaches the age of majority. *See Davie* v. *Davie*, 154 Ark. 633, 18 S.W. 935 (1892). Here, clearly the appellees did not disaffirm the sale. In fact, after reaching the age of majority, they continued to execute mineral leases and made no claim to the surface rights. Therefore, the illegality of the sale had no effect on the severance of the mineral interests by the 1939 deed.

■■ Finally, we address the appellants' claim that they established ownership of the mineral interests by adverse possession. We have held that when a mineral ownership has been severed by deed from the surface ownership, adverse possession of the surface is ineffective against the owners of the minerals unless the possessor actually invades the minerals by opening the mines or drilling wells and continues this action for the necessary period. *Taylor* v. *Scott*, 285 Ark. 102, 685 S.W.2d 160 (1985). Since there has been a severance by deed of the mineral interests, the appellants must now show that they invaded the minerals and continued this action for seven years to prevail on their adverse possession claim on the mineral acreage. The appellants testified that they executed the first mineral lease on the property in 1985. Clearly, under the facts of this case, they cannot show ownership of the minerals by adverse possession.

For the reasons stated above, we affirm.