G. Lee CRANFILL, M.D. *v.* UNION PLANTERS BANK, N.A.,
and Northeast Arkansas Management Company, LLC

CA 03-1064 158 S.W.3d 703

Court of Appeals of Arkansas
Division IV
Opinion delivered April 14, 2004

*Lyons, Emerson & Cone, P.L.C.*, by: *Scott Emerson*, for appellant.

*Snellgrove, Langley, Lovett & Culpepper*, by: *Todd Williams*, for appellee Union Planters Bank, N.A.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *D. Chris Gardner, Tom D. Womack*, and *Pamela A. Haun*, for appellee Northeast Arkansas Management Co., LLC.

JOHN MAUZY PITTMAN, Judge. This is an appeal from the Craighead County Circuit Court's entry of judgment to appellee Union Planters Bank against appellant G. Lee Cranfill, M.D., in the amount of $136,570. The central issue in this appeal is whether appellant was primarily liable on that debt or whether he was simply an accommodation party and, thus, only a surety on it. We hold that he was primarily liable on the debt and affirm the circuit court's decision.

### Factual and Procedural History

Appellant, a physician, was a shareholder of Northeast Arkansas Internal Medicine Clinic, P.A. (Clinic), in Jonesboro when it sold its fixed assets in 1995 to PhyCor, Inc., which agreed to manage the practices of the Clinic's physicians. The money paid by PhyCor to the Clinic was distributed to the physicians, and appellant received $227,018 as a result of the sale. As part of the total transaction, each physician signed a separate agreement with PhyCor that gave PhyCor the right to manage his practice if he left the Clinic's employ but remained in the area and competed against the Clinic. These agreements, including the one signed by appellant, contained a liquidated damages clause that permitted the physician to be released from that agreement upon payment of an amount equal to the proceeds he received in the sale. In 1999, the Clinic and PhyCor entered into another agreement whereby the Clinic, through two new entities, Northeast Arkansas Clinic, P.A., and appellee Northeast Arkansas Management Co., LLC (NEA Management), repurchased its assets. Another aspect of the consideration given to PhyCor for the purchase was each physician's signing of a release, confidentiality, non-disparagement, and settlement agreement with PhyCor. Appellant signed such an

agreement, which released him from any responsibility under the management agreement, including his obligation to pay liquidated damages to PhyCor as stated above.

For this transaction, appellee Union Planters Bank, N.A. (Bank), loaned $16,750,000 to appellee NEA Management, which signed a promissory note. As a part of this loan, each physician, including appellant, signed a "Limited Commercial Guaranty." Appellant's guaranty for $376,756, a portion of the principal, contained the following provision:

> Additionally, the Guarantor agrees that if at any time prior to the full repayment of the Indebtedness Guarantor's employment with Northeast Arkansas Clinic, P.A. is terminated for any reason, either voluntarily or involuntarily, other than the Guarantor's death, permanent disability, or attainment of age 62 years and normal retirement, Guarantor shall at that time be personally obligated to make immediate payment to Lender of the sum of $136,570 if termination occurs prior to the last day of the third year of the loan term, then decreasing to 66.7% of said amount until the end of the fourth year, then decreasing to 33.3% of said amount until the end of the fifth year, said payment to be applied on the balance of the Indebtedness then owing, the amount of said payment by the Guarantor to reduce and offset to the extent thereof the amount otherwise provided by the Guaranty granted hereunder, the remainder of the Guaranty to continue to be an obligation of the Guarantor until full and complete repayment of the Indebtedness occurs. Failure of the Guarantor to make said payment upon Lender's demand shall be deemed a breach of this Guaranty, and Lender may bring legal proceedings against Guarantor to recover the payment owed without Borrower as a party to the proceeding. Provided, however, failure of Lender to exercise this right to make such demand and bring legal proceedings against Guarantor shall not be prejudicial to Lender or in any way affect Guarantor's obligations pursuant to this Guaranty agreement.

On June 20, 2001, appellant's employment with the Clinic was terminated. The Bank then demanded payment of the $136,570 set forth above from appellant. After he refused to pay it, the Bank sued him in this action. Appellant filed a third-party complaint against NEA Management, alleging that he was only an accommodation party to the loan. All parties moved for summary judgment, and a hearing was held on the motions. Stating that appellant was not an accommodation party, the trial court granted summary judgment to appellees:

Whether Dr. Cranfill is an accommodation maker will depend on whether the $227,018 payment to PhyCor was a sufficient direct benefit to him or if it is, as he characterizes it, a "remote" and "nominal" benefit to him in the form of a release from a "contingent liability" to PhyCor.

The trial court then set forth a thorough review of the guaranty's terms and explained its conclusion that appellant was not an accommodation party:

Simply put, the Bank lent $16,750,000 to NEAMC. NEAMC was to bear the responsibility for the repayment of the loan. Each of the physician members guaranteed the repayment of his proportional share of the loan. In Dr. Cranfill's case, it seems apparent to the court that the plaintiff, Union Planters Bank, sought to impose two distinct obligations upon Dr. Cranfill by way of the guaranty agreement. The first obligation is, what the court assumes to be Dr. Cranfill's proportional share of the $16,750,000 that NEAMC borrowed for the buy-back from PhyCor. That amount is $376,756, or 2.24929 percent of the total amount of the loan. The second obligation seeks to require a payment of $136,570 in the event of Dr. Cranfill's termination from his employment with the clinic. There is no question that Dr. Cranfill would be responsible for repayment of the $376,756 (or the portion thereof that had not been reduced by virtue of payments made by NEAMC) upon default by NEAMC. The question here is whether he is responsible for the $136,570 in the absence of a default and if he is, whether he is entitled to reimbursement from NEAMC in that amount.

There is not a wealth of Arkansas appellate authority on this precise issue. Dr. Cranfill points to Comment 1 to Ark. Code Ann. § 4-3-419, which offers the following example:

If X cosigns a note of Corporation that is given for a loan to Corporation, X is an accommodation party if no part of the loan was paid to X or for X's direct benefit. This is true even though X may receive indirect benefit from the loan because X is employed by Corporation or is a stockholder of Corporation, or even if X is the sole stockholder so long as Corporation and X are recognized as separate entities.

Dr. Cranfill maintains that the instant situation is essentially identical to the example provided in Comment 1. Were it not for the payment of the $227,018 to PhyCor on Dr. Cranfill's behalf, the court would agree. While it is true, as Dr. Cranfill asserts that

"A guaranty has been defined as a collateral undertaking by one person to answer for payment of a debt of another. [G]uarantor is entitled to have his undertaking strictly construed. A guarantor cannot be held liable beyond the strict terms of his contract,"

and that

"A guarantor, like a surety, is a favorite of the law, and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent."

Dr. Cranfill's position must fail for two reasons. First of all, his obligation to pay the $136,570 is set out in the agreement itself. The court notes that it is called upon to discern the intent of the parties. To determine rights and duties under a contract, the court must determine the intent of the parties. This is to be accomplished by examining the written agreement to construe it and declare its legal effect. *Duvall v. Massachusetts Indemnity and Life Insurance Co.* [295 Ark. 412, 748 S.W.2d 650 (1988)]. The intent of the parties is to be determined from the whole context of the agreement; the court must consider the instrument in its entirety. *Continental Casualty Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971); *Fowler v. Unionaid Life Insurance Co.*, 180 Ark. 140, 20 S.W.2d 611 (1929). The two seeming contradictory obligations anticipate a possible change in status of the member physicians. It is clear that the intention at the time the instrument was executed was that as a member of NEAMC, Dr. Cranfill and all other members would be liable on it to the extent of their proportional share of the total amount borrowed from Union Planters. The obligation of the member physicians would not "ripen" unless and until NEAMC defaulted on the obligation. Upon a change of his then-existing status, i.e. becoming a non-member of NEAMC, the repayment obligation changed as well. Upon that change of status, Dr. Cranfill was obligated to pay the $136,570 immediately. The balance ($240,186 or such portion thereof as had not been reduced by payments made by NEAMC), would not be owed by Dr. Cranfill unless and until there was a default by NEAMC.

Secondly, the court does not find the payment of the $227,018 to be as inconsequential or indirect as Dr. Cranfill would have the court believe. In reaching this conclusion the court draws upon the rationale given by the Arkansas Court of Appeals in *Nelson v. Cotham*, 268 Ark. 622, 595 S.W.2d 693 (Ark. App. 1980). In that

case, Buxton and Cotham started Buxton Homes, Inc. The corporation entered into a contract with Nelson whereby Buxton Homes would convey title to Lot 158 to and build a home on the lot for the Nelsons. Buxton homes borrowed $75,000 from Pulaski Federal to complete the construction project. The note was signed by Cotham and Buxton and they delivered a mortgage on Lot 158. The funds were deposited into the corporation's checking account. Although the lien instrument restricted the use of the funds to making improvements on Lot 158, there was evidence that [t]he funds were applied to pay off other obligations of the corporation, including materials for other homes. The Court said that "Cotham's purpose in signing the note was not solely to lend his name as a surety to the other comakers. We are persuaded that his primary purpose in signing the Note was to benefit his business interests by obtaining money to keep his corporation going with the expectation that it would ultimately repay the Note. Therefore he was not an accommodation endorser under the circumstances."

In the instant case, Dr. Cranfill stood to be rid of a management company, that he and the other physicians with whom he was associated, apparently felt impaired their business interests. More than that however, he stood to have discharged an obligation to repay $227,018 to PhyCor in the event he chose to practice his chosen field in the area. The benefit that he received was thus direct and substantial.

## V. Conclusion

For the reasons stated herein, the court finds that Dr. G. Lee Cranfill is obligated to pay to Union Planters Bank $136,570 under the terms of the guaranty agreement. None of the balance of the amount guaranteed by him ($240,186 or such portion thereof as had not been reduced by payments made by NEAMC), will be owed by Dr. Cranfill unless and until there is a default by NEAMC. In that the court finds Dr. Cranfill not to be an accommodation maker, NEAMC is not liable to him for reimbursement.

On April 8, 2003, the trial court entered judgment for $136,570 to the Bank against appellant and dismissed appellant's third-party complaint against NEA Management. This appeal followed.

### Standard of Review

■■ Summary judgment, although no longer viewed as a drastic remedy, is to be granted only when it is clear that there are

no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *State Farm Mut. Auto. Ins. Co. v. Henderson,* 356 Ark. 335, 150 S.W.3d 276 (2004). We review all evidence in the light most favorable to the nonmoving party and will reverse the trial court only when we determine that a material question of fact remains. *Keller v. Safeco Ins. Co. of Am.,* 317 Ark. 308, 877 S.W.2d 90 (1994). We need only decide if the grant of summary judgment was appropriate, considering whether the evidentiary items presented by the moving party in support of the motion did not answer a material question of fact. *Inge v. Walker,* 70 Ark. App. 114, 15 S.W.3d 348 (2000).

### Whether Dr. Cranfill Was an Accommodation Party

In his first point, appellant argues that the trial court erred, as a matter of law, in finding that he was not an accommodation party because he did not receive a direct benefit from the loan to the Clinic and because the guaranty contract's provision regarding his payment of $136,570 was not his direct personal obligation to the Bank.

An accommodation party is a person who lends his name to a note, and it is not contemplated that he will make payments on the obligation unless and until there is a default. *See* Ark. Code Ann. § 4-3-419 (Repl. 2001). In subsection (a), this statute provides:

> If an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation."

Appellant points out that Comment 3 to Ark. Code Ann. § 4-3-419 states that "it is almost always the case that a co-maker who signs with the words of guaranty after the signature is an accommodation party." The commentary to a statute is not controlling over the statute's clear language but is a highly persuasive aid to construing that statute. *Huffman v. Arkansas Judicial Discipline & Disability Comm'n,* 344 Ark. 274, 42 S.W.3d 386 (2001).

Appellant also argues: "It is evident from the example in the Comment that one must receive some or all of the actual loan funds in order to not be considered an accommodation maker under Ark. Code Ann. § 4-3-419(a)." This example in Comment 1 to the statute reads as follows:

For example, if X cosigns a note of Corporation that is given for a loan to Corporation, X is an accommodation party if no part of the loan was paid to X or for X's direct benefit. This is true even though X may receive indirect benefit from the loan because X is employed by Corporation or is a stockholder of Corporation, or even if X is the sole stockholder so long as Corporation and X are recognized as separate entities.

In reviewing issues of statutory interpretation, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *State Farm Mut. Auto. Ins. Co. v. Henderson, supra.* The basic rule of statutory construction is to give effect to the intent of the legislature. *Central & Southern Cos. v. Weiss,* 339 Ark. 76, 3 S.W.3d 294 (1999). In considering the meaning of a statute, we consider it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Stephens v. Arkansas Sch. for the Blind,* 341 Ark. 939, 20 S.W.3d 397 (2000). If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Id.*

The question central to this appeal, therefore, is whether appellant received a direct benefit from the transaction, within the meaning of the statute. Appellant argues that he did not receive a direct benefit from the Bank's loan to the Clinic because he did not receive any of the funds that the Clinic borrowed from the Bank to pay PhyCor, and he asserts that his release from his obligation to PhyCor was not the type of direct benefit contemplated by the statute.

The intention of the parties is the most significant element in determining accommodation status, and when a person receives no direct benefit from an executed note, it is likely that he will be regarded as an accommodation party. *Mobley v. Harmon,* 304 Ark. 500, 803 S.W.2d 900 (1991). The status of a party to a note must be determined from the circumstances in existence at the time the note is issued. *Nelson v. Cotham,* 268 Ark. 622, 595 S.W.2d 693 (Ark. App. 1980). Clearly, a party can receive a direct benefit from a loan without receiving any of the proceeds. In *Nelson v. Cotham,* we held that Mr. Cotham, an officer, director, and stockholder of Buxton Homes, Inc., was not an accommodation party to a note he signed, the proceeds of which went to the corporation:

It is clear from the record that the $75,000.00 was borrowed from PFS in order to fulfill the contract with appellants, but the

proceeds were disbursed by Mr. Cotham, as secretary-treasurer, on various construction projects of the Corporation. This was obviously an effort to keep the Corporation, in which he had a substantial interest, afloat. The motive with which an act was done may be ascertained and determined by inference from the facts and circumstances connected with the transactions and the parties to it. *Seaboard Finance Co. v. Dorman*, 4 Conn. Cir. 154, 227 A.2d 441 (1966), 90 ALR 3d 342. Mr. Cotham did keep the Corporation afloat at that time and, as an officer, director and stockholder, was benefited to that extent. *Lasky v. Berger*, Colo. App., 536 P.2d 1157 (1975); *MacArthur v. Cannon*, 4 Conn. Cir. 208, 229 A.2d 372, *cert. den.* 154 Conn. 748, 227 A.2d 562 (1967).

In *Lasky v. Berger, supra*, the court affirmed a judgment dismissing a comaker's action to recover the amount he paid on the note from the other maker, where his primary purpose in signing the note was to benefit his business interests. The court said it was proper to consider that his business interests were in fact benefited even though that benefit was subsequently eliminated when he was required to pay the note, because the status of a party to a note must be determined based on the circumstances in existence at the time the note was signed. Accordingly, the court added in *Lasky v. Berger*, the receipt of benefits at that time could be considered as substantial evidence that the party did not sign as an accommodation maker but as a principal comaker. *See also Wohlhuter v. St. Charles Lumber & Fuel Co.*, 25 Ill. App.3d 812, 323 N.E.2d 134, aff'd 62 Ill.2d 16, 338 N.E.2d 179 (1975).

. . . .

While PFS did insist that Mr. Cotham personally sign the Note before credit would be extended to the Corporation, this record shows that Cotham's purpose in signing the Note was not solely to lend his name as a surety to the other comakers. We are persuaded that his primary purpose in signing the Note was to benefit his business interests by obtaining money to keep his corporation going with the expectation that it would ultimately repay the Note. Therefore he was not an accommodation endorser under the circumstances. We hold that his payment of the Note to PFS ended the matter as far as these appellants were concerned as Mr. Cotham was a comaker.

268 Ark. at 628-30, 595 S.W.2d at 697-98.

It has been held that release from a personal obligation can amount to a direct benefit from a loan. In *Mooney v. GR*

*& Assocs.*, 746 P.2d 1174, 1177 (Ct. App. Utah 1987), the appellate court found that a party claiming accommodation party status had actually received a direct benefit from a loan, stating:

> We find first that Hagan received both direct and indirect benefits from the transaction, observing, like the trial court, that "Hagan benefited from the transaction by being released from his personal guarantee on the real estate contract," and that "his partnership was the recipient of a substantial promissory note from other participants in the transaction."

Also, the settlement of a legitimate legal controversy, whatever its merits, has been held to constitute a direct benefit for this purpose. *See Robinson Bros. Drilling, Inc. v. First Nat'l Bank*, 9 F.3d 871 (10th Cir. 1993) (applying Oklahoma law). In *First NH Bank v. Lawlor*, 600 A.2d 1120, 1121 (Me. 1992), the court denied accommodation-party status to a party who "expected employment, a bonus, and ownership in the enterprise" as a result of a loan. *See also* James J. White and Robert S. Summers, *Uniform Commercial Code* § 16-11(a) (4th ed. 1995).

 In our view, part of the consideration given in return for the Clinic's payment of over $16 million to Phycor was the release of Dr. Cranfill from his obligation to PhyCor. Under the authority of the cases discussed above, we hold that the trial court did not err in concluding that this release was a direct and substantial benefit to appellant. We therefore conclude that he was not an accommodation party.

### A Direct Personal Obligation

Appellant further argues that his agreement to repay $136,570 to the Bank was not a separate agreement, distinct from his guaranty, because he signed only one document, entitled a "Limited Commercial Guaranty," in which he is referred to as a guarantor, not an obligor, in the provision dealing with the $136,570. He states that the document, as a whole, is only one of guaranty.[1]

 The first rule of interpretation of a contract is to give the language employed the meaning that the parties intended, and the court must consider the sense and meanings of the words

---

[1] He also argues, in this point, that if this court holds that he has a direct personal obligation to the Bank, as an accommodation party, he has the right to seek reimbursement from the Clinic. This issue is addressed below.

used by the parties as they are taken and understood in their plain, ordinary meaning. *First Nat'l Bank v. Griffin,* 310 Ark. 164, 832 S.W.2d 816 (1992), *cert. denied,* 507 U.S. 919 (1993). It is the duty of the court to construe a contract according to its unambiguous language without enlarging or extending its terms. *North v. Philliber,* 269 Ark. 403, 602 S.W.2d 643 (1980). In regard to the construction of an agreement's terms, the initial determination of the existence of an ambiguity rests with the court. *Fryer v. Boyett,* 64 Ark. App. 7, 978 S.W.2d 304 (1998). When a contract is unambiguous, its construction is a question of law for the court. *Id.* A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *Id.*

 · Clearly, the agreement appellant signed is not susceptible to more than one equally reasonable construction. We must note that, in the paragraph entitled "Nature of Guaranty," it is stated: "Guarantor intends to guarantee the collection of all of the Indebtedness within the limits set forth in the preceding section [regarding maximum liability] of this Guaranty." The agreement then lists the events that must occur before the Bank will exercise its right to collection from appellant. However, from its terms, this paragraph specifically excludes the Bank's right to seek immediate payment of $136,570 if appellant's employment with the Clinic terminates before the end of the fifth year of the term of the note. Therefore, it is clear that appellant has a direct, personal obligation to the Bank that is separate from his guaranty of NEA Management's debt. Because the trial court's construction of the agreement as creating a personal obligation to the Bank, even if there has been no default by NEA Management, was correct, we also affirm on this point.

### Whether a Question of Fact Remained

In his second point, appellant argues in the alternative that, if this court does not find that, as a matter of law, he was an accommodation party, whether he had that status was a question of fact and, thus, the summary judgment should be reversed. Appellant bases this argument on the following: (a) according to Ark. Code Ann. § 4-3-419(c), there is a presumption that a person is an accommodation party when he signs an instrument with the words "guaranty" or words to that effect; (b) Comment 3 to Ark. Code Ann. § 4-3-419 states that whether a party is an accommodation

party is a question of fact; (c) the guaranty is ambiguous, which permits the introduction of parol evidence and requires the rules of construction of contracts to be applied.

 Appellant points out that the document he signed consistently referred to him as a guarantor. It is correct that Ark. Code Ann. § 4-3-419(c) provides that there is a presumption that a person is an accommodation party when he signs an instrument with the words "guarantor," "surety," or words to that effect. Comment 3 to this statute provides: "A party challenging accommodation party status would have to rebut this presumption by producing evidence that the signer was in fact a direct beneficiary of the value given for the instrument." It is also true that Comment 3 to this statute expressly provides that whether a party is an accommodation party is a question of fact. It has often been held that whether one is an accommodation party is a question of fact, and the burden of proof is upon the party claiming to be an accommodation party. *Riegler v. Riegler*, 244 Ark. 483, 426 S.W.2d 789 (1968); *Womack v. First State Bank*, 21 Ark. App. 33, 728 S.W.2d 194 (1987). However, appellant waived this argument by moving for summary judgment.

The trial court found that the parties' cross-motions for summary judgment amounted to their consent for it to determine whether appellant was an accommodation party. The trial court made the following statement about the propriety of deciding this issue by summary judgment:

> Whether or not a person signed as an accommodation party is ordinarily a question of fact. The parties agree on virtually all of the pertinent facts that gave rise to the document in question, and that are necessary to reach a solution of this central question. They have however failed to agree on that remaining central fact. By submitting this issue to the court by way of motions for summary judgment, it appears that they are prepared to have the court make this determination.

 In *Tunnel v. Progressive Northern Insurance Co.*, 80 Ark. App. 215, 217-18, 95 S.W.3d 1, 2-3 (2003), we wrote:

> Normally, on a summary judgment appeal, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (2000). But in a case where the parties agree on the facts,

we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgments, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *McCutchen v. Patton,* 340 Ark. 371,.10 S.W.3d 439 (2000). We further note that where the meaning of a contract does not depend on disputed extrinsic evidence, the construction and legal effect of the policy are questions of law. *See Smith v. Prudential Prop. & Cas. Ins. Co.,* 340 Ark. 335, 10 S.W.3d 846 (2000).

*Accord McGough v. Pine Bluff Sch. Dist.,* 79 Ark. App. 235, 85 S.W.3d 920 (2002).

Appellant argues that the filing of cross-motions for summary judgment does not "inevitably lead to the conclusion that there are no material issues of fact in dispute." Citing *Wood v. Lathrop,* 249 Ark. 376, 459 S.W.2d 808 (1970), he argues that the fact that both parties have moved for summary judgment does not establish that there is no issue of fact; a party may concede that there is no issue if his legal theory is accepted and yet maintain that there is a genuine dispute as to material facts if his opponent's theory is adopted. Appellant is correct. We followed the reasoning of *Wood v. Lathrop* in *Moss v. Allstate Insurance Co.,* 29 Ark. App. 33, 776 S.W.2d 831 (1989), and *Heritage Bay Property Regime v. Jenkins,* 27 Ark. App. 112, 766 S.W.2d 624 (1989).

In *Chick-a-Dilly Properties, Inc. v. Hilyard,* 42 Ark. App. 120, 856 S.W.2d 15 (1993), we held that a party that had moved for summary judgment and had represented to the trial court that the sole issue was ready for the court to decide as a matter of law could not argue on appeal that the court erred in ruling against it on that point as a matter of law. In that case, the parties made cross motions for summary judgment on the sàme legal theory and the same material facts. We explained:

> The leading case in Arkansas on the filing of cross motions for summary judgment is undoubtedly *Wood v. Lathrop,* 249 Ark. 376, 459 S.W.2d 808 (1970). In an opinion written by Justice George Rose Smith the court said:
>
> > Both Mrs. Wood and the Lathrops filed motions for summary judgment, setting forth the facts substantially as we have outlined them. We may say at this point that we do not agree

with the appellees' contention that a party who files a motion for summary judgment after his adversary has filed such a motion thereby concedes that no material issue of fact exists in the case. That argument is opposed both to reason and to authority.

When such cross motions are filed each movant is contending for the purpose of his own motion that there is no material issue of fact in the case, but there is no reason at all to say as an inflexible rule that he also admits the nonexistence of any factual issue with respect to his adversary's motion. Our summary judgment statute was copied from Rule 56 of the Federal Rules of Civil Procedure, with respect to which this statement is made in Barron and Holtzoff's Federal Practice & Procedure, § 1239 (Wright's Ed., 1958):

> The fact that both parties have moved for summary judgment does not establish that there is no issue of fact. A party may concede that there is no issue if his legal theory is accepted and yet maintain that there is a genuine dispute as to material facts if his opponent's theory is adopted. Thus, both motions should be denied if the court finds that there is actually a genuine issue as to a material fact.

249 Ark. at 379, 459 S.W.2d at 809-10.

The short form of the rule in *Wood v. Lathrop* may be found in 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2720, at 19 (2d ed. 1983): "[T]he mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury." There are sound reasons for the rule:

> For example, a defendant moving for summary judgment on the ground that the claim is barred by the statute of limitations may contend that there is no issue of fact as to that defense, but if the defense is held insufficient as a matter of law, he still may argue that there is an issue of fact as to his liability on the claim asserted against him.

Wright § 2720 at 21-22.

The general principle set forth in *Wood* has been subsequently followed in the supreme court and in this court. *Dickson v. Renfro,*

263 Ark. 718, 569 S.W.2d 66 (1978); *Moss v. Allstate Ins. Co.*, 29 Ark. App. 33, 776 S.W.2d 831 (1989); *Heritage Bay Property Regime v. Jenkins*, 27 Ark. App. 112, 766 S.W.2d 624 (1989).

There are however decisions of both courts holding that an appellant may find himself barred from raising on appeal the argument that an issue of fact remains to be decided when he has contended to the contrary in the trial court. In *Bibler Brothers Timber Corp. v. Tojac Minerals, Inc.*, 281 Ark. 431, 436, 664 S.W.2d 472, 474-75 (1984), the court said:

> Appellant's final point for reversal is that the trial court erred in granting judgment on the pleadings because material issues of fact were unresolved. Specifically, appellant alleges the issue in dispute is whether the lease was subject to forfeiture due to appellees' failure to drill and develop the non-unitized acreage. However, the failure to drill and develop was waived when the appellant asserted positively in its Motion for Summary Judgment:
>
> "That there is no genuine issue as to any material fact and that Plaintiff [appellant] is entitled to a judgment as a matter of law."

In *Neel v. Citizens First State Bank of Arkadelphia*, 28 Ark. App. 116, 120, 771 S.W.2d 303, 305 (1989), this court said:

> Appellant's argument that issues of fact remain to be tried is entirely inconsistent with her position below. First, appellant offered no proof in response to appellee's affidavits and exhibits. Second, appellant clearly waived this issue and agreed with appellee that no material issues of fact remained for trial. Accordingly, appellant may not assert this argument on appeal. *See Briscoe v. Shoppers News, Inc.*, 10 Ark. App. 395, 401, 664 S.W.2d 886 (1984) (one may not complain of action he has induced, consented to, or acquiesced in).

We think the cases are entirely reconcilable. The case which comes closest to explaining the distinction is *Schlytter v. Baker*, 580 F.2d 848, 849-50 (5th Cir. 1978):

> Appellant is not estopped by the mere filing of his motion for summary judgment from now asserting that

there are genuine issues of fact. As a general rule the filing by both parties of opposing motions for summary judgment will not warrant a court's granting either party's motion if, indeed, there exists a genuine factual dispute concerning a material issue .... [T]he rationale of this rule lies in the fact that each party may be basing its motion on a different legal theory dependent on a different set of material facts.

When the parties proceed on the same legal theory and on the same material facts, however, the basis for the rule disappears. Thus, in qualifying the general rule, this Court has said:

Nonetheless, cross motions may be probative of the non-existence of a factual dispute when, as here, they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.

(Citations omitted.)

In the case at bar, trial counsel for the appellants, during his argument on the cross motions for summary judgment made it clear to the trial court that the dispute between the parties focused on which consumer price index applied and that that issue was ready for the court to decide as a matter of law. Here, as in *Schlytter*, the parties proceeded on the same legal theory and the same material facts. Although we do not believe the trial judge was thereby bound to grant summary judgment to one side or the other, under the circumstances presented here the appellants may not argue that the court erred in deciding the issue as one of law.

42 Ark. App. at 126-29, 856 S.W.2d at 18-20.

We hold that, even applying the reasoning of *Wood v. Lathrop*, the trial court's entry of summary judgment should be affirmed. The parties proceeded on the same legal theory (whether appellant is an accommodation party, to be determined by whether he received a benefit within the terms of Ark. Code Ann. § 4-3-419(a)) and the same material facts. Therefore, after all the parties moved for summary judgment, the trial court was correct in treating the issue as one to be decided in that manner.

Appellant further contends that the guaranty agreement is ambiguous because the provision requiring the payment of $136,570 refers to him as a guarantor. Therefore, he argues, the

rules of construction require that the agreement be construed against the drafter (the Bank) and a question of fact exists for trial. *See Karnes v. Trumbo,* 28 Ark. App. 34, 770 S.W.2d 199 (1989). It is true that, if an agreement is ambiguous, it should be construed strictly against the drafter. *See Stacy v. Williams,* 38 Ark. App. 192, 834 S.W.2d 156 (1992). Because this rule does not apply at all if the contract is unambiguous, as is the case here, we find no merit in this argument.

### Appellant's Rights and Defenses As an Accommodation Party

Appellant further argues that the Bank cannot sue him for collection because none of the conditions set forth in Ark. Code Ann. § 4-3-419(d) have occurred and that, as an accommodation party, he is entitled to reimbursement from the Clinic if he is required to pay the Bank. We disagree. Because appellant was not an accommodation party, he cannot prevail on these issues.

Affirmed.

ROBBINS and BIRD, JJ., agree.