# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2950
No. 07-3079

_____

| | |
|---|---|
| Thornton Drilling Company, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * Appeals from the United States |
| National Union Fire Insurance | * District Court for the |
| Company of Pittsburgh, PA, | * Western District of Arkansas. |
| | * |
| Defendant - Appellant, | * |
| | * |
| Stephens Production Company, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: April 18, 2008
Filed: August 12, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

Eric Stricklin, an employee of Thornton Drilling Company ("Thornton"), was killed by an explosion or blowout while working in Franklin County, Arkansas, on an oil drilling rig leased to Thornton by the producer, Stephens Production Company ("Stephens"). Stricklin's wife and representative of his estate filed a wrongful death

action against Thornton and Stephens. The exclusive workers' compensation remedy barred Stricklin's claim against Thornton, but Stephens asserted that Thornton is contractually obligated to indemnify Stephens for its liability to Stricklin. Stephens settled Stricklin's wrongful death claim for $1,705,000. Thornton's commercial liability insurer paid $1,000,000, its policy limit. Stephens' insurer paid $205,000. Stephens paid its deductible, the remaining $500,000, and demanded indemnity from Thornton, which tendered the demand to its umbrella liability insurer, National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

When National Union denied coverage, Thornton commenced this diversity action, seeking a declaratory judgment it has no duty to indemnify Stephens or, alternatively, that its indemnity obligation is covered by National Union's policy. Ruling on cross motions for summary judgment, the district court[1] held that Thornton must indemnify Stephens and that this obligation is covered by National Union's policy. Thornton and National Union separately appeal.[2] As National Union now concedes coverage, the only issue we must decide is whether Thornton must indemnify Stephens. The parties agree that Arkansas law governs the construction of the relevant contracts. Reviewing the district court's grant of summary judgment and its interpretation of state contract law *de novo*, we affirm. See Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., 519 F.3d 421, 425 (8th Cir. 2008) (standard of review).

Under Arkansas law, an agreement to indemnify is enforceable in accordance with normal contract law principles, except that a promise to indemnify another party

---

[1]The HONORABLE JIMM LARRY HENDREN, Chief Judge of the United States District Court for the Western District of Arkansas.

[2]At oral argument, we questioned our jurisdiction under 28 U.S.C. § 1291 because the order being appealed did not resolve a counterclaim Stephens asserted against Thornton. Thereafter, the district court entered an amended and substituted judgment, *nunc pro tunc*, dismissing Stephens' counterclaim with prejudice. As there is now a final judgment, we have jurisdiction to decide the appeal on the merits.

for its own negligence must be clear and unequivocal.  See Chevron U.S.A., Inc. v. Murphy Exploration & Prod. Co., 151 S.W.3d 306, 310 (Ark. 2004); Nabholz Constr. Corp. v. Graham, 892 S.W.2d 456, 459 (Ark. 1995).  The clarity of the promise is not an issue in this case.  Rather, the issue is how to interpret inconsistent indemnity provisions in three separate and distinct agreements between Thornton and Stephens.

First, in June 2000 -- well before Stricklin's death in January 2005 -- Thornton and Stephens entered into a Contractor's Master Agreement ("CMA").  The preamble recited that Thornton as contractor "may perform work . . . for [Stephens] from time to time."  Specific jobs "will be requested and confirmed by written contract . . . . Any and all work agreed on shall be performed in accordance with and subject to the terms and provisions of this Master Agreement."  Paragraph 4(d) included the indemnity provision on which Thornton and National Union rely:

> [Stephens] shall . . . indemnify and hold harmless [Thornton] . . . from and against any claims . . . for . . . personal injury, death or property damage . . . from . . . explosion . . . and/or a well blowout . . . even if contributed to or caused by the . . . negligence . . . of [Thornton].

The parties agree that, if this provision applies, Thornton has no duty to indemnify Stephens, and the district court's decision to the contrary must be reversed.  In arguing that this provision applies, Thornton and Stephens emphasize paragraph 15 of the CMA, which provided:

> In the event there should be any conflict between the provisions of this Agreement and any Company work order . . . or Contractor's work ticket . . . or any other type of written memoranda, pertaining to the subject matter hereof, the provisions of this Agreement shall control unless expressly agreed otherwise in writing by the parties hereto.

Second, in May 2004, Thornton leased from Stephens the drilling rig on which Stricklin was working when the accident occurred.  The lease was reflected in a Lease

-3-

Agreement with Option To Sell (the "Lease Agreement"), which contained the following indemnity provision:

> [THORNTON] ASSUMES ANY AND ALL LIABILITY AND AGREES TO . . . INDEMNIFY, AND HOLD HARMLESS . . . [STEPHENS] . . . FROM AND AGAINST ANY . . . LIABILITY . . . THAT IS ASSERTED BY OR ARISES ON ACCOUNT OF BODILY INJURY [OR] DEATH . . . ALLEGED TO HAVE BEEN SUSTAINED IN CONNECTION WITH . . . THE PERFORMANCE . . . OF THIS LEASE AGREEMENT, REGARDLESS OF WHETHER OR NOT SUCH CLAIMS OR ACTIONS ARE FOUNDED . . . UPON THE ALLEGED NEGLIGENCE . . . OF [STEPHENS] . . . .

Third, the drilling work that led to Stricklin's death was governed by a separate Drilling Bid Proposal and Daywork Drilling Contract between Thornton and Stephens (the "Drilling Contract"). A warning at the top of the first page of this International Association of Drilling Contractors form contract stated, "**THIS AGREEMENT CONTAINS PROVISIONS RELATING TO INDEMNITY . . . AND ALLOCATION OF RISK**." A subsection entitled "Contractor's Indemnification of Operator" then provided:

> [Thornton] shall . . . indemnify [Stephens] . . . from and against all claims . . . of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of [Thornton's] employees . . . on account of bodily injury, death or damage to property.

The parties agree that, if the indemnity provision in either the Drilling Contract or the Lease Agreement applies, Thornton must indemnify Stephens, and the district court's decision should be affirmed. Neither the Drilling Contract nor the Lease Agreement specifically referred to the CMA.

-4-

The dispute turns on a question of contract law: when a "master agreement" states that it prevails over conflicting terms in future contracts "unless expressly agreed otherwise in writing," does the master agreement override conflicting terms in subsequent written contracts that do not refer specifically to the master agreement, as Thornton and National Union contend?[3] The district court rejected this interpretation of the CMA because it would render the conflicting indemnity provisions in the Drilling Contract and the Lease Agreement "a nullity." Though Thornton and National Union urge a contrary interpretation of the CMA on appeal, they do not challenge the district court's conclusion that the relevant contract provisions are unambiguous and are therefore appropriate for disposition on cross motions for summary judgment. See generally Cranfill v. Union Planters Bank, N.A., 158 S.W.3d 703, 711-16 (Ark. App. 2004).

On appeal, Thornton and National Union argue that the plain meaning of the term "expressly agreed otherwise" in paragraph 15 of the CMA is that subsequent written contracts such as the Drilling Contract and the Lease Agreement cannot be construed as modifying the indemnity provisions in the CMA unless they explicitly refer to the CMA and identify the term being modified. As no prior Arkansas case supports this proposition, National Union relies on cases from other jurisdictions that enforced explicit subsequent contract modifications, such as Goshey v. ITT Life Insurance Corp., 590 F.2d 737, 740 (8th Cir. 1979). Thornton relies on Sempra Energy Trading Corp. v. Algoma Steel, Inc., No. 00-9227, 2001 WL 282684, at *5-6 (S.D.N.Y) (unpublished), aff'd, 300 F.3d 242 (2d Cir. 2002), a case that supports the

_____

[3]As an alternative position, Stephens argued in the district court that par. 15 of the CMA contains an ambiguity -- whether the reference to "any other type of written memoranda" includes the "written contracts" referred to in the CMA preamble, such as the Drilling Contract and the Lease Agreement. Like the district court, we need not consider this question, but the omission of "written contract" from par. 15 tends to cut against Thornton's contention that the CMA overrides these later contracts.

district court's decision because it recognized a distinction between modifying a prior contract and entering into subsequent agreements that are separate and distinct.

In our view, Thornton and National Union wrongly frame the issue as being whether the Drilling Contract and the Lease Agreement effectively modified the CMA. Those later agreements were separate, complete written contracts governing discrete aspects of the parties' overall relationship. They included unambiguous indemnity provisions conflicting with paragraph 4(d) of the CMA. Like the district court, we conclude that those conflicting provisions fully satisfied the "expressly agreed otherwise" provision in paragraph 15 of the CMA.[4] This interpretation does not render the indemnity provisions in the CMA a nullity, as they would still govern less formal drilling work done by Thornton for Stephens that is not covered by a separate and complete written agreement. Therefore, as is usually the case when courts construe a sequence of written agreements, a subsequent contract that applies more specifically to the drilling work in question is controlling. See Coop. Refinery Ass'n v. Consumers Public Power Dist., 190 F.2d 852, 856 (8th Cir. 1951) ("A subsequent contract completely covering the same subject-matter . . . but containing terms inconsistent with the former contract, so that the two cannot stand together . . . becomes the only agreement of the parties on the subject.") (quotation omitted).

The judgment of the district court is affirmed.

_____

---

[4]Thornton emphasizes that the dictionary defines "express" as meaning "explicit," "plain," and "precise." But the question of course is whether the CMA required that anything other than the conflicting term be explicit. We think not. The Drilling Contract and the Lease Agreement left no doubt that Thornton was explicitly agreeing to indemnify Stephens for an accident like the one that killed Stricklin.