

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-28

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY<br><br>APPELLANT<br><br>V.<br><br><br>SEECO, INC., AND CORNELIUS TYUS, ET AL.<br><br>APPELLEES | Opinion Delivered: OCTOBER 5, 2016<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CV-11-653]<br><br>HONORABLE TROY B. BRASWELL, JR., JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Union Pacific Railroad Company (Union Pacific) appeals from the Faulkner County Circuit Court's judgment and order filed on September 18, 2015, and agreed final order filed on November 5, 2015, finding that the mineral rights in question were owned in fee simple by separate appellees, individual members of the Tyus family (collectively the Tyus family). On appeal, Union Pacific contends that the circuit court erred in granting appellee SEECO, Inc.'s motion for summary judgment and that this court should reverse and remand for the circuit court to enter a judgment confirming that it is the rightful owner of the mineral rights on the property at issue. We disagree and affirm.

Appellee SEECO, Inc. (SEECO), filed a complaint for interpleader and declaratory judgment. In its complaint, SEECO sought to interplead royalties from the production of natural gas on certain real property in Faulkner County, Arkansas, and for the circuit court

to determine the rightful owner of the mineral rights and the royalty proceeds.[1]  Both the

Tyus family and Union Pacific filed answers asserting respective ownership of the mineral

rights.[2]  SEECO subsequently filed a motion for summary judgment, alleging that the

material facts were undisputed and that the Tyus family was entitled to the mineral rights.

Union Pacific responded to the motion for summary judgment and also filed a cross-motion

for summary judgment, alleging that Union Pacific was the owner of the mineral rights.

The Tyus family filed a response to SEECO's motion for summary judgment, stating that it

concurred with SEECO's motion that the Tyus family was entitled to the mineral rights

and attached the affidavit of Wes Tyus in support thereof.

The undisputed facts presented by the parties are as follows.  The property description

of the mineral interest in question is NW/4 of the NE/4 of Section 19, Township 8, Range

13 West in Faulkner County, Arkansas.  The entire property was initially transferred by a

---

[1]SEECO subsequently filed a first amended complaint on August 31, 2011, and a second amended complaint on October 4, 2011, naming additional parties with a potential interest in the property.  SEECO's second amended complaint named Missouri Pacific Railroad Company; Anadarko E&P Company, LP; Anadarko Land Corp.; Upland Industrial Development Company; Union Pacific Railroad Company; Cornelius Tyus; Lillie Tyus; Robert Lee Tyus; Johnny B. Lyons; Odella Tyus Dillard; Gertha Tyus; Lurlia Simmons; Bonita Tyus; Tamara C. Tyus; Karlna M. Tyus; Xavier C. Tyus; Mae H. Lyons; Zalmenta Lyons; John Wesley Tyus; Ruby Tyus; Telitha Ealy; Wesley Tyus; Azerlean Westley; Mary Tyus; Glenn Tyus; Della Water; Rita Glover; Derrick Tyus; Alton Tyus; Wefus Tyus Sr.; Eva J. Tyus; John Tyus; Evelyn Toney; Vargean Graham; Melissa Bowman Tyus; Wefus Tyus, Jr.; Fred Simmons, Jr.; Anna Rue Simmons Gray; Ida Mae Nesbit; Willie Nesbitt; Loretta Burks; and Savannah Vaughn.

[2]Missouri Pacific Railroad Company (Missouri Pacific) was originally a named party to this action.  However, the circuit court granted Missouri Pacific's motion to dismiss on September 28, 2011.  The order found that Missouri Pacific was no longer an existing entity and that any interest that the company might have had would have been transferred to Union Pacific as part of a merger.

recorded document dated on November 17, 1857, from the United States Secretary of the Interior to the State of Arkansas for the benefit of the Little Rock & Fort Smith Railroad. Union Pacific explained that it had become the successor in interest to Little Rock & Fort Smith Railroad after a series of various mergers over the years.[3] Clearly, Union Pacific was the record title owner of the property commencing in 1857.

The first recorded deed that mentions the Tyus family is a warranty deed that purports to convey the property in its entirety from R.B. and C.E. Tyus to J.L. and Girtha Tyus in 1941. Subsequent to 1941, there are several deeds purporting to transfer ownership of the property among the various Tyus family members. The Tyus family's subsequent purported chain of title from 1941 to the present was uninterrupted. It is undisputed that there is not an executed, filed deed transferring ownership from Union Pacific to the Tyus family. However, Union Pacific did concede the following in its summary-judgment response brief concerning the 1941 deed: "[t]he Tyus family may have begun living on the Property and acquired some record title interest to the surface through their actual use."

While there were no executed and filed deeds between 1857 and 1941, there was some evidence concerning activity to the property records between 1936 and 1941. Prior to 1936, the property in its entirety was assessed to Union Pacific by the Faulkner County Real Estate Assessor. In 1936, the county-assessment records show a line marking through the name "Union Pacific" as owner and the name "R.B. Tyus" handwritten onto the

---

[3]Union Pacific specifically explained that the Little Rock & Fort Smith Railroad was acquired by St. Louis, Iron Mountain and Southern Railway in 1906. In 1917, the St. Louis, Iron Mountain and Southern Railway was merged with Missouri Pacific, and Missouri Pacific was merged into Union Pacific in 1997.

assessment record for the property. There were no other notes, additions, or deletions to the assessment records for 1936. The Faulkner County assessment records from 1937 to 1958 were not included in our record.

The next pertinent assessment in the county records is from 1958. In 1958, the Oil, Gas, Mineral Royalty Interest book from Faulkner County indicates that "Union Pacific" was the owner of the mineral interest on the property. No other notes, additions, or deletions are found in the 1958 book. Our record does not reflect any other assessments between 1959 and 1967. The next pertinent record is found in the 1968 Oil, Gas, Mineral Royalty Interest book, which again indicates that Union Pacific was the owner of the mineral rights. There are no assessment records between 1969 and 1990. In 1990, the Oil, Gas, Mineral Royalty Interest book again indicates that Union Pacific was the owner of the mineral rights, and a similar entry appears eight years later in 1998. In short, from 1936 through 2014, a period of seventy-eight years, the assessment records from Faulkner County indicate that Union Pacific was the owner of the mineral interest for four separate and indiscriminate years.

Again, while there were no executed and recorded deeds from Union Pacific to the Tyus family, Union Pacific argued that in 1938, there was a lost deed between Union Pacific and the Tyus family. Union Pacific contends that this 1938 lost deed transferred ownership of the surface rights to the Tyus family but specifically reserved the mineral rights to Union Pacific, and therefore, Union Pacific remains the owner of the severed mineral interests. As support, Union Pacific submitted an affidavit of Matthew G. Kozisek, an employee of Union Pacific. Kozisek explained that in his research he had uncovered some documents

from January 1938 and found a blank, unsigned, and unrecorded deed transferring the surface rights of the property to R.B. and C.E. Tyus and reserving the mineral rights to Union Pacific.[4] In his affidavit, Kozisek further explained that it was standard procedure for the railroad to sell land through a purchase contract that included several installment payments. Once the buyer had paid the required installment payments, the land commissioner would then execute a deed granting the surface property to the purchaser, retaining the mineral interest with the railroad, and the purchaser would be responsible to file the executed deed with the circuit clerk. It is undisputed by the parties that this 1938 prepared deed (i.e. the "lost deed") was unsigned by the parties and not filed of record in the real estate records of Faulkner County.

The only other pertinent evidence proffered by Union Pacific concerning title to the property was that Union Pacific offered two redemption deeds that were conveyed in 2004 to Union Pacific[5] as a direct result of its payment of delinquent ad valorem taxes for 2000–2002 for the mineral rights to the property.

In its motion for summary judgment, SEECO argued that the Tyus family had been in uninterrupted and continuous possession of the property for over seventy years and that there was no evidence of a mineral severance in favor of Union Pacific or its predecessor.

---

[4]The unsigned and unrecorded deed actually purported to reserve the mineral interest to Missouri Pacific, Union Pacific's predecessor. For the sake of clarity, we referred to the grantor as "Union Pacific" instead of "Missouri Pacific."

[5]Although the redemption deeds were actually conveyed to Missouri Pacific, Union Pacific's predecessor, we again referred to "Union Pacific" instead of "Missouri Pacific" for the sake of clarity.

Additionally, SEECO contended that although redemption deeds had been issued, the deeds were only evidence of a tax payment and did not vest title.

The Tyus family attached an affidavit to its response to SEECO's motion for summary judgment to support their contention that they owned the mineral rights. In the affidavit, Wes Tyus stated that he was familiar with the property and that his family had been in exclusive possession of the property "well in excess of the seven-year adverse possession period . . . and in fact, the Tyus family has owned this property for many decades." Additionally, he stated that members of his family had paid the real–estate taxes associated with the property for more than seven years.

In its response to SEECO's motion for summary judgment, and in its own cross-motion for summary judgment, Union Pacific argued that it held record title to the property by virtue of the 1857 grant from the United States Department of Interior and that the Tyus family was not the owner of the mineral rights either through record title or through adverse possession. In the alternative, Union Pacific contended that if the Tyus family owned the surface rights, the mineral rights had been severed and that Union Pacific was the owner of the severed mineral rights. However, we note that Union Pacific did not contest that the Tyus family ultimately owned the surface rights to the property at the summary-judgment hearing.

At the beginning of the summary-judgment hearing and on the record, the parties agreed that although each party had filed cross-motions for summary judgment, there were no additional facts that were not presented in the pleadings submitted to the circuit court. The circuit court inquired whether this was a type of case where both parties would agree

that one party would win on summary judgment or one where there might be a genuine issue of fact. Pointedly, counsel for Union Pacific stated that he did not "know of any other facts that would come out that are not presented in these pleadings," and further agreed that either "one side wins on these facts or the other does." After further discussion, counsel for SEECO indicated that the circuit court would need to apply different burdens of proof in analyzing the case. Counsel explained that adverse possession would have cured any deficiencies in the Tyus family's ownership, which required a burden of preponderance of the evidence. However, Union Pacific's claim of a lost deed indicating a severance of the mineral rights required a clear-and-convincing burden of proof. Finally, we note that counsel for Union Pacific stated on numerous occasions that it was "not trying to claim any right in the surface" interest. All issues were well argued before the circuit court, including but not limited to, the adverse-possession claim by the Tyus family, the "lost deed," and the severed-mineral-rights claim by Union Pacific.

After the hearing, the circuit court entered a detailed order granting SEECO's motion for summary judgment and denying Union Pacific's cross-motion for summary judgment. The circuit court found that the Tyus family owned the mineral rights in fee simple along with the surface rights. The circuit court specifically found that Union Pacific failed to present evidence sufficient to meet the requisite burden to show that the 1938 lost deed was duly executed or its contents proved in the same manner. It further found that there was insufficient proof to show that a severance of the mineral rights had occurred and that in the absence of a severance, the Tyus family adversely possessed the mineral rights when it adversely possessed the surface rights to the property. Subsequently, in an agreed

final order, the circuit court dismissed all other claims, counterclaims, or cross-claims to the extent anything was left pending. This appeal followed.

Appellant specifically argues on appeal that (1) the circuit court erred by requiring it to prove its title to the mineral rights by clear and convincing evidence; (2) the circuit court erred because record title to the mineral rights never passed from Union Pacific and because the surface and mineral rights had been severed; (3) the circuit court erred when it concluded that the 1941 wild deed conveyed the mineral rights; (4) the circuit court erred when it determined that the Tyus family acquired the rights by adverse possession; and (5) the circuit court impermissibly weighed the evidence at the summary-judgment stage. We conclude that appellant's arguments are without merit.

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Nationwide Mut. Fire Ins. Co. v. Citizens Bank & Tr. Co.*, 2014 Ark. 20, 431 S.W.3d 292. Ordinarily, in a summary-judgment appeal, when determining if there are genuine issues of material fact in dispute, we would view the evidence in the light most favorable to the party resisting the motion, and resolve any doubts and inferences against the moving party. *Id.* However, in the present case, which does not involve the question of whether factual issues exist but rather the application of legal rules, we simply determine whether appellees were entitled to judgment as a matter of law. *Barton Land Servs., Inc. v. SEECO, Inc.*, 2013 Ark. 231, 428 S.W.3d 430. When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment may be an appropriate means of resolving the case. *Cranfill v. Union Planters Bank,*

*N.A.*, 86 Ark. App. 1, 158 S.W.3d 703 (2004).  As to issues of law presented, our review is de novo.  *State v. Cassell*, 2013 Ark. 221, 427 S.W.3d 663.

Since there is no recorded deed conveying any interest from Union Pacific or its predecessors to the Tyus family, and because "Union Pacific is not trying to claim any right in the surface," the remaining issues are whether Union Pacific provided proof that a severance of the mineral rights had occurred and whether Union Pacific retained the purported severed mineral interest.  Union Pacific contends that a severance of the mineral rights occurred either through the preparation of a 1938 lost deed and its accompanying application, through four random mineral assessments in the Faulkner County Assessor's Office, or through two redemption deeds that had been conveyed in 2004, or through a combination thereof.

Despite Union Pacific's argument to the contrary, it had the burden to prove the contents of the lost deed that it claimed severed the mineral rights by clear, satisfactory, and convincing proof.  *Thompson v. Graves*, 281 Ark. 492, 665 S.W.2d 268 (1984).  However, Union Pacific failed to provide parol evidence that would show that the deed was duly executed as required by law and show substantially all its contents by clear, convincing, and satisfactory evidence.  *See Witt v. Graves*, 302 Ark. 160, 787 S.W.2d 681 (1990).  Although Kozisek's affidavit indicated that he found a blank, unrecorded, and unsigned deed, Union Pacific was unable to provide evidence that the deed had actually been executed as required by law or that the contents included a reservation of the mineral rights as suggested in the draft Kozisek found.

Furthermore, the separate and sporadic mineral assessments in 1958, 1968, 1990, and 1998 did not show that Union Pacific had severed the mineral rights in this case. Prior to a 2011 amendment, Arkansas Code Annotated § 26-26-1110(a) stated that when mineral rights were owned separately from the surface, "it shall be the duty of the county assessor when advised of the fact, *either by personal notice or by recording of the deeds* . . . to assess the mineral rights in lands separate of the general property therein." (Emphasis added.) Assuming arguendo that a mineral assessment by the county assessor is evidence of a severance, the separate, sporadic assessments here cannot serve as sufficient evidence of severance because the first assessment did not take place until 1958, which was after the Tyus family had adversely possessed the property. The 1958 assessment occurred seventeen years after the 1941 deed had been recorded, twenty years after the 1938 purported lost deed, and twenty-two years after the Tyus family was listed as the owner of the property on the 1936 tax records. Additionally, unlike the evidence offered in *Witt*, Union Pacific failed to offer any affidavits exhibiting the personal knowledge of a mineral severance from the land or other evidence such as mineral deeds, mineral leases, or surface deeds to corroborate the existence of a mineral severance. *See Witt*, *supra*. Union Pacific further failed to introduce any evidence to explain why or how the county assessor was put on notice to separately assess the mineral rights only in 1958, 1968, 1990, and 1998.

Likewise, the two redemption deeds conveyed in 2004 did not sever the mineral rights. When one has no right, title, or interest in the land, he or she does not acquire title from a redemption deed, but merely confers a benefit to the owner by extinguishing the state's tax lien. *Ferguson v. Fields*, 208 Ark. 839, 188 S.W.2d 302 (1945). A redemption

deed from the state does not purport to convey title, but is a mere payment of taxes. *Id*; *Pyburn v. Campbell*, 158 Ark. 321, 250 S.W. 15 (1908).

Union Pacific additionally contends on appeal that the Tyus family could not claim title by adverse possession because the Tyus family failed to assert that their possession was hostile. However, because Union Pacific did not contest that the Tyus family had met the hostility element of adverse possession for ownership of the surface rights at the summary-judgment hearing, it cannot argue otherwise for the first time now on appeal.[6] *Unifirst Corp. v. Ludwig Props., Inc.*, 2015 Ark. App. 694, 476 S.W.3d 852.

Union Pacific further contends on appeal that the Tyus family failed to show that their adverse possession of the minerals was open and notorious. After reviewing the evidence presented in this case and after acknowledging that Union Pacific did not contest ownership of the surface rights, we conclude that the Tyus family took adverse possession of the surface rights at least by 1948 (1941 plus the seven-year-adverse-possession period), which was ten years before the first assessment of the mineral rights took place in 1958.

We agree with Union Pacific that our case law provides that when mineral rights have been severed, adverse possession of the surface rights is ineffective against the owner

---

[6]Although we note that SEECO's complaint does not specifically state that the Tyus family obtained its interest through adverse possession, adverse possession was clearly placed at issue at the summary-judgment hearing. Rule 15(b) of the Arkansas Rules of Civil Procedure (2015) allows for the amendment of the pleadings to conform to the evidence introduced at trial. The rule is liberal in its allowance of amendments to conform pleadings to proof and even contemplates an amendment after judgment. *Barnett v. Gomance*, 2010 Ark. App. 109, 377 S.W.3d 317. Even if no amendment is made, it does not affect the trial of issues not raised in the pleadings, as permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. *Id*.

of minerals unless the possessor actually invades the minerals by opening mines or drilling wells and continues that action for the necessary period. *Bonds v. Carter*, 348 Ark. 591, 75 S.W.3d 192 (2002). However, because Union Pacific failed to show evidence that the mineral rights were severed by at least 1948, the Tyus family adversely possessed the mineral rights when the surface rights were adversely possessed, without providing any additional proof.

Although Union Pacific argues that summary judgment was inappropriate, Union Pacific is barred from raising on appeal the argument that an issue of fact remains to be decided when it contended the contrary in circuit court. *See Cranfill, supra.* At the hearing, counsel for Union Pacific stated that he did not "know of any other facts that would come out that are not presented in these pleadings" and further explained that either "one side wins on these facts or the other does." Here, as in *Cranfill*, the parties agreed to proceed on the same legal theory and the same material facts. *Id.* Therefore, although we do not believe the circuit court was thereby bound to grant summary judgment to one side or the other, under the circumstances presented here, Union Pacific may not argue that the circuit court erred in deciding the issue as one of law. *Id.* Thus, we affirm.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *Bruce B. Tidwell* and *Jamie Huffman Jones*, for appellant.

*Daily & Woods, P.L.L.C.*, by: *Thomas A. Daily* and *C. Michael Daily*, for appellee Seeco, Inc.

*Adkisson & Wilcox, LLP*, by: *Beau Wilcox*, for appellees Cornelius Tyus, et al.